[L. A. No. 2404. In Bank.—August 28, 1909.]

In the Matter of the Estate of HERMAN BUDAN, Deceased. ANNIE BUDAN et al., Appellants, v. EDITH BUDAN et al., Respondents.

EVIDENCE OF ATTENDING PHYSICIAN—MENTAL AND PHYSICAL CONDITION OF TESTATOR—INFORMATION DERIVED IN PROFESSIONAL CAPACITY.— An attending physician, who had treated a testator professionally at a sanitarium continuously for thirteen days prior to his death, and who during that period had diagnosed his case and observed his actions, conduct, and demeanor, but who was not called as an expert, is properly restrained, on a contest of his will, from testifying to the physical and mental condition of the testator at the time of the date of his will executed during such period, notwithstanding it was not directly shown, by preliminary inquiries, that all the information he had obtained on such matters was acquired while attending the testator in his professional capacity, and was necessary to enable him to prescribe or act for his patient.

ID.—INTIMATE ACQUAINTANCE—OPINION OF TRAINED NURSE.—A trained nurse, in attendance on the testator every hour of the day for three days prior to his death, and who during that period remained with him for intervals varying from a few minutes to an hour or more, during which they conversed on different subjects, may become an "intimate acquaintance" of the testator, within the meaning of subdivision 10 of section 1870 of the Code of Civil Procedure, and as such qualified to testify as to her opinion respecting his mental condition.

ID.—WHAT CONSTITUTES AN INTIMATE ACQUAINTANCE—DISCRETION OF
TRIAL COURT—APPEAL.—To constitute an "intimate acquaintance"
necessarily requires a familiarity with the mental temperament of
the person whose soundness of mind is in question, but this famil-
iarity is not to be measured exclusively by an acquaintanceship for
any particular length of time, although time may be an element in
its determination. The matter is one within the discretion of the
trial court, and in the absence of abuse, the appellate court will not
interfere with its ruling on the subject.

ID.—CONTEST OF WILL—INSTRUCTIONS—SENILE DEMENTIA.—On a con-
test of a will on the grounds of the unsoundness of the mind of
the testator and undue influence, it is not error to refuse an instruc-
tion requested by the contestant as to the phase of insanity known
as senile dementia, where the record fails to show any evidence of
the testator being affected with that phase of insanity, or that it
was an issue in the case.

ID.—INSTRUCTION AS TO WEIGHT OF EVIDENCE—ORAL STATEMENTS—
ERROR WITHOUT PREJUDICE.—An instruction that "evidence which
consists of mere repetitions of oral statements is subject to much
imperfection and mistake; that the party giving such testimony
may have misunderstood what was said, and it frequently happens
that a witness by unintentionally altering a few expressions really
used gives an effect to the statement completely at variance with
what the party did say," even if erroneous as an abstract proposi-
tion, is without prejudice, when the record fails to show that there
was any testimony in the case of any oral statements made by any
one.

APPEAL from a judgment of the Superior Court of San
Luis Obispo County and from an order refusing a new trial.
E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

Lamy & Putnam, for Appellants.

W. H. Spencer, for Respondents.

LORIGAN, J.—This is a contest of a will (after its admis-
sion to probate) on the ground of unsoundness of mind of the
testator and undue influence.

The case was tried before a jury, and from a verdict and
judgment in favor of respondents, and from an order denying
their motion for a new trial the contestants appeal.

The points made for reversal are:—

1. It is insisted that the court erred in sustaining objections
to questions asked by contestants of Dr. W. M. Stover, a wit-

ness called in their behalf. The doctor—a physician—had treated the testator professionally at the San Luis sanitarium from November 25, 1907, to December 7, 1907, the date of his death. He testified, preliminarily, that he had made a diagnosis of the testator's case; had treated him continually during the above period and during that time had observed his actions, conduct, and demeanor. He was then asked by the attorney for contestants the nature of the disease from which the testator was suffering and its duration; whether while under the control of the doctor the testator was rational or irrational; whether in his opinion he was competent to transact business during the period he was treating him and whether he had mental capacity sufficient on October 5, 1907 (the date of the making of the will), to have made a will and to have known and understood its tenor and purport. Objections of respondents to all of these inquiries were sustained by the court, and, we think, properly. Dr. Stover was not called as an expert; no questions as such, or hypothetical questions were put to him. He was the attending physician of the testator and while no preliminary inquiries were made by the respondents to show directly that all the information which the physician could have obtained, on the matters concerning which he was interrogated, was information acquired in attending the testator, in his professional capacity as his physician, and was necessary to enable him to prescribe, or act for his patient, still we think this clearly appears to be the fact, upon a fair and reasonable consideration of the testimony of the physician as to his professional relations to, and treatment of the testator. Under such circumstances the contestants had no right to make the inquiries because "a licensed physician . . . cannot without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient." (Code Civ. Proc., sec. 1881, subd. 4.) In conformity with this provision of the code the objections to the inquiries were properly sustained.

2. One of the witnesses for respondents was a trained nurse who commenced to work at the sanitarium under Doctor Stover and attended the testator as a nurse for three days prior to his death. She was in his room in attendance upon him every hour of the day during that period, sometimes remaining with

him a few minutes and at other times remaining for an hour or. so. He talked with her on different subjects, but principally about his physical condition and going to the hospital; of his property matters; of his family and their conduct. towards him. She testified that, as a nurse, it was her duty to observe the symptoms, both physical and mental, of patients committed to her charge and report them to the attending physician. She was asked and permitted to testify, over the objection of contestants, that she had formed an opinion of the mental soundness of the testator during the period he was under her care and was of the opinion that he was of sound mind.

It is insisted that it was error to permit this testimony because the witness was not an "intimate acquaintance" whose opinion, respecting the mental condition of a person, may be received under subdivision 10 of section 1870 of the Code of Civil Procedure.

It is often a difficult matter to determine whether a witness whose opinion is sought to be had of the mental condition of another, is an intimate acquaintance of his, within the purview of the section, or not. What the meaning of the term "intimate acquaintance" is has not been clearly defined. To be such an acquaintance necessarily requires a familiarity with the mental temperament of the person the soundness of whose mind is in question. But this familiarity is not to be measured exclusively by an acquaintanceship for any particular length of time. Time must, of course, enter as an element, but not as the controlling element. One who has known a person for years may not have had sufficient opportunity for observation to be capable of forming an opinion as to his mental condition at any given time. On the other hand, a person may have been so closely connected with another, and his opportunities may have been so favorable for observation of his conduct and demeanor that he is qualified to speak of his mental condition though the period of observation may have covered only a short time. So, as the circumstances must vary upon which the question of who is an "intimate acquaintance," within the meaning of the code section, must be determined, and as no fixed rule on the subject can be laid down, the matter is necessarily left under the authorities to the discretion of the trial court, and when that discretion does not seem to have been

abused, the appellate court will not interfere with the ruling of the trial court on the subject. (*Estate of Carpenter,* 94 Cal. 406, [29 Pac. 1101]; *Wheelock* v. *Godfrey,* 100 Cal. 578, [35 Pac. 317]; *People* v. *Suesser,* 142 Cal. 360, [75 Pac. 1093]; *Huyck* v. *Rennie,* 151 Cal. 411, [90 Pac. 929].)

The witness, whose right to express an opinion is challenged, was a trained nurse whose duty it was to take note of the mental and physical condition of the testator during the time she had him in charge and who did so. She had conversations with him daily on various subjects, and from her relation to him as nurse, had favorable opportunities to become, at least to some extent, intimately acquainted with him. Under these circumstances it cannot be said that the court abused its discretion in holding her to be qualified under the code provision referred to, and to permit her to give her opinion of the mental condition of the testator.

3. It is insisted that the court erred in refusing to give certain instructions asked by contestants, and in giving certain others requested by respondents.

The court did not err in refusing to give contestants' instruction as to the phase of insanity known as senile dementia, because the record does not show any evidence of the testator being affected with that phase of insanity, or that it was an issue in the case.

The court instructed the jury at the request of respondents that "evidence which consists of mere repetition of oral statements is subject to much imperfection and mistake; that the party giving such testimony may have misunderstood what was said and it frequently happens that . . . a witness by unintentionally altering a few expressions really used gives an effect to the statement completely at variance with what the party did say."

It is claimed that this instruction comes within the ban of *Kauffman* v. *Maier,* 94 Cal. 283, [29 Pac. 481], as being an invasion by the court of the province of the jury to determine all matters of fact, the credibility of witnesses, and to pass upon the effect and weight of the evidence. This instruction is not exactly like the one involved in *Kauffman* v. *Maier,* and other cases, where the jury were cautioned as to the accuracy of oral testimony as to admissions. No caution is contained in the instruction in question. Conceding, however, without decid-

ing, that the instruction comes within the ban of *Kauffman* v. *Maier*, still it would afford no reason on this appeal for reversing the cause because it was given. From the record before us it does not appear that there was any testimony in the case whatever of any oral statements made by any one. Hence, the appellant is only complaining of an instruction given as erroneous in the abstract. But this is no ground for reversal. It must appear that giving it was prejudicial to the appellant and that there was some testimony in the case to which the jury might have applied the erroneous instruction. As the record does not show anything of the kind, the appellant could not be injured because the instruction was given even if it should be declared erroneous.

There are other points in the case which are of so little merit that we do not discuss them.

The judgment and order are affirmed.

Henshaw, J., Shaw, J., Angellotti, J., Sloss, J., and Melvin, J., concurred.