[L. A. No. 16496. In Bank.—March 25, 1938.]

ROY MEHOLLIN, Appellant, v. T. YSUCHIYAMA et al., Respondents.

54

E. B. Drake for Appellant.

George L. Greer for Respondents.

SEAWELL, J.—Plaintiff prosecutes this appeal from a judgment for defendants entered upon a jury verdict. The action was brought by plaintiff, forty-three years of age, to recover damages for the wrongful death of his mother, sixty-three years of age, upon whom he was dependent for support by reason of his physical infirmities.

The plaintiff's mother received the injuries from which she died in the Grand Central Public Market in the city of Los Angeles. Defendants Ysuchiyama and Tanobe lease a stall in said market in which they sell fruit and vegetables. Decedent had purchased tomatoes at said stall. As she was leaving the stall she fell and sustained injuries consisting of a fractured left humerus (bone of the upper arm), a fracture of two dorsal vertebrae, and a bruise on the head. She died about a month after the accident from a pulmonary embolism, which, it was stipulated, resulted from said injuries. It

was the theory of plaintiff that decedent fell by reason of boxes negligently left in the aisle adjoining the stall by an employee of defendants, or because of boards protruding from beneath said boxes. As grounds for reversal plaintiff urges errors in instructions. No claim is made that the floor was wet, or that there was any foreign matter on it, other than said boxes and boards.

The stall of defendants occupies a rectangular space 18½ by 23 feet. Produce is displayed in sloping counters as commonly used in vegetable markets. Sales are made from within the stall, where the produce is kept. There was testimony on behalf of defendants that by reason of the width of the counters it is impossible to arrange the displays from the back of the counters. Boxes of fruit and vegetables to be arranged for display are carried from the stall into the adjoining aisles. The produce is then taken from the boxes and placed in the display counters. The market opens at 8 A. M. Employees of defendants customarily arrive between 7 and 8 A. M., and commence the work of arranging the displays, which is completed about 9 o'clock. The market is brightly lighted at all times.

The accident took place at about 8:30 A. M. Defendants admit that in the aisle adjoining their stall on the east, near the northeast corner of the stall, there were three piles of lug boxes. One pile contained nine boxes, and the other two, three boxes each. These boxes, containing peas, had been taken into the aisle from the stall to arrange the counter for display by employee Kiyoshi. He had finished arranging the peas, leaving the boxes, empty or partially filled, in the aisle, and at the time decedent came to the stall he was arranging a display of cherries. He testified that he had not finished decorating with the peas more than ten minutes before the accident took place. According to his testimony, decedent stood between two of the piles of boxes while he waited on her. He sold her a pound of tomatoes and then turned to continue arranging the cherries. He next saw decedent lying prone on the concrete floor by the boxes.

The only person who saw decedent fall was Mr. Brown, an employee of a meat market which occupied space north of defendants' stall. From the meat market he observed decedent complete her purchase, turn, take "a step or two", and fall. The presence of the boxes barred his view of her

feet, and he did not observe what her feet had struck. This witness testified that on the concrete floor beneath one of the piles of boxes were several boards, about ⅜ of an inch thick, being the top boards removed from lug boxes, and that these boards protruded about a foot and a half or two feet from beneath the pile of boxes. He "thought" decedent stumbled on these boards. Tanobe, one of the defendants, and Kiyoshi, the employee who had brought the boxes into the aisle, denied that there were any boards under the boxes or on the floor.

The rules and regulations of the Grand Central Public Market, which were incorporated in the lease to defendants, contained the following: "Lessor will keep the aisles clean but tenants must not throw or place dirt, boxes or garbage or anything else whatsoever in the same."

■ Plaintiff complains of the refusal of the court to give an instruction to the effect that defendants were without right to place boxes in the aisle, and their failure to keep the aisle clear was negligence. It was not error to refuse said instruction. A violation of the above provision between lessor and lessees would not be germane as between the lessees and a third party on the question of general negligence. Furthermore, it cannot be said as a matter of law that the above-quoted provision would absolutely preclude the placing of boxes in the aisle temporarily for the purpose of arranging displays, in view of the testimony that by reason of the width of the stationary counters it was impossible to decorate them except from the front or aisle side. ■ Whether the defendants' employee was negligent in failing to take the pea boxes inside the stall before proceeding to arrange the cherry display, upon which he had been working ten minutes when the accident took place, was a question for the jury.

The court gave plaintiff's requested instruction to the effect that if the boxes were left in the aisle for the purpose of placing the vegetables upon counters "then it was the duty of said defendants to use ordinary care in rendering the aisle where the deceased was walking or moving in a reasonably safe condition, and a failure, if any, on the part of said defendants in this behalf was negligence".

The court gave instructions on the issue of decedent's contributory negligence, including an instruction that deceased had a right to assume that the aisle "was in a reasonably

safe condition, and did not have to make any particular examination to determine the same, and she had a right to indulge this presumption until she knew, or by the use of ordinary care could have known, to the contrary''.

The court also gave the following instruction: ''A storekeeper, and in this case T. Ysuchiyama and Y. Tanobe, must use ordinary care to see that his premises are not made unsafe for the use of customers. He is held, however, only to the use of ordinary care and to the care usually exercised by others in the same business and under the same circumstances, and defendants T. Ysuchiyama and Y. Tanobe are not required to use or exercise the highest degree of care nor are they insurers of the safety of their patrons. Ordinary or due care is all that is required of them in the maintenance of their stall and the aisleways adjoining, and if you find that such due and ordinary care was exercised by them in this regard, then plaintiff may not recover and your verdict should be for the defendants.''

The reference in the second sentence of the above instruction to the care ''usually exercised by others in the same business'' is not a correct statement of the law. A person cannot justify his failure to use ordinary care by showing that others in the same business practice a similar want of care. (*Anstead* v. *Pacific G. & E. Co.*, 203 Cal. 634 [265 Pac. 487]; *Foster* v. *Fernandes*, 200 Cal. 274 [252 Pac. 726]; *Ales* v. *Ryan*, 8 Cal. (2d) 82, 100 [64 Pac. (2d) 409].) Furthermore, there was no evidence introduced as to the practice and custom of other persons operating vegetable markets. But an instruction, erroneous or correct, which relates to matters as to which there is no evidence will not justify a reversal unless it has misled the jury to the prejudice of the appellant. (*Estate of Budan*, 156 Cal. 230, 234 [104 Pac. 442]; *Lawrence* v. *Southern P. Co.*, 189 Cal. 434, 444 [208 Pac. 966]; *O'Meara* v. *Haiden*, 204 Cal. 354, 369 [268 Pac. 334, 60 A. L. R. 1381]; 24 Cal. Jur. 830; 10 Cal. Jur. 10-Year Supp. 700–702.) In the case herein, we are of the view that plaintiff was not prejudiced by the above statement, which was preceded and followed by a correct statement of the law, and which had no application to any facts in evidence.

Considering the instructions as a whole, we are of the view that the charge to the jury does not contain error

which will authorize a reversal. It was for the jury to resolve conflicts in the evidence and to determine the issues of defendants' negligence and plaintiff's contributory negligence. Although said evidence in the light of the instructions given would have sustained a verdict for the plaintiff, it cannot be said as a matter of law that the judgment for defendants is without support in the record. In this situation, as an appellate court, we cannot disturb the judgment.

The judgment is affirmed.

Shenk, J., Curtis, J., Edmonds, J., Langdon, J., and Waste, C. J., concurred.