[Civ. No. 7063. Third Dist. Nov. 20, 1944.]

JOHN SORTINO, Appellant, v. JACK LONEOAK et al., Respondents.

John D. Chinello and Rae B. Carter for Appellant.

Chester O. Hansen and Eckhart A. Thompson for Respondents.

THOMPSON, J.—In a suit for damages for personal injuries sustained by the plaintiff as a result of an automobile collision which occurred on a public highway while he was riding as a passenger in a Ford truck owned and driven by Frank Mortillaro, a jury returned a verdict for the defendants, pursuant to which judgment was rendered against plaintiff. A motion for new trial was denied. From that judgment this appeal was perfected. Mr. Mortillaro was not a party to the action.

The appellant contends that the judgment is not supported by the evidence because it appears, as a matter of law, that the defendants were guilty of negligence which was the proximate cause of the accident, by failing to ''give audible warning,'' as required by section 528 of the Vehicle Code, before attempting to pass with their truck the machine in which the plaintiff was riding as a passenger. It is asserted that the negligence of Mr. Mortillaro, if any, could not be imputed to the plaintiff because the latter had no control over the operation of the machine in which he was riding. It is conceded the plaintiff himself was free from contributory negligence. But it is claimed the court erred in giving to the jury an instruction defining contributory negligence and declaring the rule regarding the burden of proof with respect thereto, for the reason that there is no evidence to support the alleged imputed negligence of Mortillaro.

At 8 o'clock a.m. on September 25, 1942, the plaintiff was riding as a passenger in a Ford truck owned and driven by Frank Mortillaro. The plaintiff had been employed by Mortillaro and was accompanying him to his farm for the purpose of picking figs. The plaintiff had no control over the operation of that machine. He sat on a box at the rear of the driver's seat. They were proceeding northerly from Fresno along the easterly side of Public Highway Number 99, at a moderate rate of speed. The defendants' International truck was owned by J. P. Wadleigh and W. C. Petersen. Mr. Petersen was not served with process, and the cause against him was dismissed. The International truck, which was loaded with

oranges, and driven by the defendant Jack Loneoak, was following the Ford truck at a speed of about thirty miles per hour. There were no other machines on that highway in the vicinity where the accident occurred. It was broad daylight and the paved highway was dry. When the Ford truck reached a point about three miles south of Madera, near a bridge which crosses Cottonwood Creek, beyond which the Firebaugh Road intersects the public highway, Mr. Mortillaro reduced the speed of his machine to eight or ten miles an hour and undertook to cross the highway to his left for the purpose of turning on to the Firebaugh Road. There is a conflict of evidence as to whether he gave the arm signal, or other warning, of a left turn as required by section 544 of the Vehicle Code. Immediately after passing the bridge, Mr. Loneoak, the driver of the International truck, accelerated the speed of his machine and attempted to pass the Ford truck on the left side of the highway. The evidence as to whether Loneoak sounded the horn of his machine as required by section 528 of the Vehicle Code, before he attempted to pass the Ford truck, may be conflicting, but there is substantial evidence that he did so several times. He claims to have been taken by surprise at the sudden left turn of the Ford machine, without warning, and that he was therefore unable to avoid the collision which occurred. The International truck struck the left rear portion of the Ford truck with great force and the plaintiff was thrown from the machine, striking his head on the pavement and fracturing his skull. He was seriously and possibly permanently injured.

The cause was tried with a jury, which rendered a verdict in favor of the defendants. The defendants alleged in their answer that the plaintiff and the driver of the car in which he was riding at the time of the accident were then engaged in a joint enterprise. The evident purpose of that allegation was to fasten the negligence of Mortillaro upon the plaintiff by imputation. The evidence failed to support that claim. The court correctly instructed the jury that the negligence of the driver of an automobile may not be imputed to a passenger therein, unless it also appears that the passenger has authority to exercise control over the operation of the machine. The court also defined the term ''contributory negligence'' and announced the rule of the burden of proof with respect thereto.

■ The negligence of Frank Mortillaro, who was driving the Ford truck at the time of the accident, may not be imputed to the plaintiff under the circumstances of this case. Mortillaro was not a party to this action. The plaintiff was a mere employee of Mr. Mortillaro, who was conveying him to his orchard where he was to pick figs. The plaintiff sat on a box behind the driver's seat at the time of the accident. He had no authority to direct the operation of that machine, and he made no attempt to do so. The mere fact that the plaintiff was an employee of the driver of the machine, who was then engaged in taking him to the place where his work was to be performed, did not furnish sufficient evidence to constitute a joint enterprise so as to impute the negligence of the driver of the automobile to his employee. It is not sufficient upon which to impute the negligence of the driver of an automobile to his passenger that they both have a common purpose and a common destination at the time of the accident. It is necessary, in order to create that relationship, that the passenger shall also have the legal right to exercise joint control over the operation of the machine. (*Peccolo* v. *City of Los Angeles*, 8 Cal.2d 532, 537 [66 P.2d 651]; *Clark* v. *Janss*, 39 Cal.App.2d 523 [103 P.2d 175].) In the Peccolo case, *supra*, it is said in that regard:

" 'A joint enterprise which will hold each of those engaged therein responsible for the negligence of the others is one where there is not only a common purpose but also a common control or right to control the instrumentality of conveyance. That the two employees had a common purpose cannot be questioned, but it is not true that they had joint control of the operation of the machine or the right to such joint control.' "

In 4 Blashfield's Ency. of Automobile Law and Practice, section 2498, at page 326, it is said:

"While it is usual for the master to control the servant's operations, it is rarely indeed that the servant has a right even to participate in governing the master's. Therefore, the servant is not chargeable with the master's negligence, and where workmen riding with their employer are injured by his negligence, his negligence is not imputable to them, in the absence of any direct showing of control by them over the employer."

The foregoing text is supported by several cited cases.

In the present case the defendants did allege in their an-

swer that the plaintiff and Frank Mortillaro were engaged in a joint adventure at the time of the accident. But the evidence fails to support that allegation. It is immaterial, for the purpose of this appeal, that Mortillaro may have been guilty of negligence in operating his Ford truck, which might have rendered him liable to the plaintiff for the injuries which the latter sustained. The driver of that car was not a party to this action.

There is ample evidence to support the implied finding of the jury that the defendants were not guilty of negligence which proximately caused the accident. The defendants concede in their brief on appeal that "appellant himself was without fault." There is, however, a conflict of evidence regarding defendants' alleged negligence in failing to comply with section 528 (b) of the Vehicle Code by omitting to "give audible warning" before attempting to pass the Ford truck in which the plaintiff was riding. Jack Loneoak, who was driving defendants' International truck, testified that he sounded the horn of his vehicle "two or three times" before he attempted to pass the Ford truck. He said that he first sounded the horn "about two or three hundred feet . . . to the south of the point of impact." He testified that he later sounded the horn once or twice. He said "I was possibly ten or twelve feet behind him and blew my horn to indicate that I was going to pass." Regarding the blowing of defendants' horn a third time, this colloquy occurred:

"Q. . . . Now, did you toot your horn again at any time after that? A. Immediately I saw that other truck start across the highway from me, if I recall, I put my elbow on the horn and kept jiggling it. . . .

"Q. Now how far from the . . . other truck were you when you started jiggling that horn? A. Possibly three or four or five feet."

The plaintiff testified that he did not hear the defendants' horn. He said in that regard:

"Q. . . . Now did you hear any signal of any kind given by the driver of the other truck before the crash? A. No, I didn't. Q. Were you in a position to hear? A. I imagine I was."

In view of that conflict of evidence we may not interfere with the implied finding of the jury that the defendants adequately complied with the provisions of section 528 of the

Vehicle Code and that they were not guilty of negligence which proximately caused the accident.

We are of the opinion that the instruction defining contributory negligence did not constitute prejudicial error. We are unable to perceive how the jury could have been misled or prejudiced by that instruction. At the request of the plaintiff the court properly instructed the jury that:

"The negligence of the driver of an automobile cannot be imputed to a guest or passenger therein, and a guest or passenger is not chargeable with a driver's negligence, if any, unless the evidence shows that such guest or passenger exercised some control over the driver, or that the guest or passenger possessed the right or power to supervise or direct the manner in which such automobile should be operated."

The foregoing instruction was addressed to the issue created by defendants' allegation in their answer that the plaintiff and Mortillaro were engaged in a joint enterprise at the time of the accident. If they had been then engaged in a joint adventure, and the plaintiff further had the right to joint control of the operation of the Ford truck, the negligence of the driver of that machine, if any, might have been lawfully imputed to the plaintiff so as to defeat his right to recover damages against the defendants for the injuries received. It is true that the evidence fails to show adequately those facts.

It was not prejudicial error for the court to have supplemented the previously quoted instruction on the subject of imputed contributory negligence, by correctly defining the term "contributory negligence" and by charging the jury with respect to the burden of proof thereof. It seems quite appropriate and certainly it was not prejudicial for the court to have done so. That procedure properly left with the jury the right to determine from the evidence adduced whether there was proof, by necessary inference or otherwise, of plaintiff's joint right to control the operation of the machine. If the jury had been warranted in finding that the negligence of the driver of the machine in which the plaintiff was riding proximately contributed to the accident, and that the plaintiff and Mortillaro were then engaged in a joint enterprise and had joint control over the operation of the machine, the imputed negligence of Mortillaro would have constituted contributory negligence which would have resulted in barring plaintiff's right of recovery from the defen-

dants on that account, even though the defendants were also guilty of negligence.

The challenged instruction reads:

"Contributory negligence in such an act or omission on the part of the plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of a defendant, was the proximate cause of the injury complained of.

"Unless it is shown by, or may be inferred from the evidence offered by plaintiff, such negligence is a matter of defense, to be proven affirmatively by defendants.

"But if you find from a preponderance of all the evidence in this case that such contributory negligence has been shown, then the burden of proof rule has been met by the defendant."

The foregoing instruction does not infer that the plaintiff was in fact guilty of contributory negligence. The jury was clearly told in the previously quoted instruction that unless it found from the evidence that the plaintiff had authority to control the operation of the machine, the negligence of the driver of the vericle in which he rode could not be imputed to him. There was no contention at the trial that the plaintiff was guilty of any other negligence.

All that the appellant may reasonably contend for, regarding the alleged prejudicial nature of the challenged instruction, is that the court should not have defined the term "contributory negligence," since there is no evidence that he had any right to exercise control over the operation of the machine in which he rode. But we must assume the jury fully understood and correctly applied the court's instruction upon the subject of imputed negligence, and that they therefore concluded that since there was no evidence of plaintiff's authority to control the operation of the machine, he was not guilty of contributory negligence by imputation or otherwise. There is nothing from which we may presume the jury was prejudiced by these instructions. ▪ It is not reversible error for the court to instruct the jury upon a principle of law, even though there may be an entire absence of evidence on that particular subject, unless it also appears that the jury was misled and prejudiced thereby. That prejudice does not appear in the present case.

It has been uniformly held that "An instruction, erroneous or correct, which relates to matters as to which there is no evidence will not justify a reversal unless it has misled the

jury to the prejudice of the appellant." (*Mehollin* v. *Ysuchi-yama,* 11 Cal.2d 53, 57 [77 P.2d 855]; *Marston* v. *Pickwick Stages, Inc.,* 78 Cal.App. 526 [248 P. 930]; *Gambrel* v. *Duensing,* 127 Cal.App. 593, 606 [16 P.2d 284]; 2 Cal.Jur. 1026, § 611, 24 Cal.Jur. 830, § 95.) In the Marston case, *supra,* it is said at page 533, quoting with approval from *People* v. *Cochran,* 61 Cal. 548:

"If an instruction in a case is asked which refers to facts which there is no evidence to prove, it is not error to refuse to give it; and if given, although in fact erroneous in the abstract, it will not be regarded as an error for which the judgment will be reversed, unless it be manifest that the jury was misled by it to the prejudice of the defendant."

In the present case there was no miscarriage of justice. There is an abundance of evidence to support the verdict in favor of the defendants. It seems evident that the jury must have assumed the defendants were entirely free from negligence, and that the accident occurred through the negligence of Mr. Mortillaro, the driver of the Ford truck in which the plaintiff was riding as a passenger. He was not a party to this action. Possibly it was a mistake to have failed to make him a party defendant. The challenged instruction was harmless.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 18, 1945.