Filed 7/16/15  P. v. Stewart CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

<u>COPY</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>  v.<br><br>RALPH EDWARD STEWART,<br><br>        Defendant and Appellant. | C074218<br><br>(Super. Ct. No. 11F05165) |

A jury convicted defendant Ralph Edward Stewart of three counts of second degree robbery (Pen. Code, § 211)[1], and sustained five serious felony and two strike allegations.  The trial court sentenced defendant to 75 years to life plus 30 years.

On appeal, defendant contends:  (1) his prior federal bank robbery convictions were improperly admitted; (2) testimony from his sister regarding defendant's mental state at the time of his guilty pleas to the prior federal bank robberies was erroneously

_____

[1]  Undesignated statutory references are to the Penal Code.

1

excluded; (3) there is insufficient evidence that the prior federal bank robbery convictions were serious felonies; (4) the trial court's findings regarding the federal priors violated his due process rights; and (5) he was deprived of his right to have a jury determine the nature of his prior convictions. We reverse the serious felony and strike findings as to defendant's four prior federal convictions and remand for further proceedings. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*June 6 Robbery*

On June 6, 2011, Karissa Moore was working as a teller at the U.S. Bank in Citrus Heights when defendant approached her and said, "This is a robbery. Give me your 100s and 50s." Defendant leaned very close to Moore's face and looked into her eyes. She was intimidated and moved a step back. He asked Moore to put the money in a case he laid out at the teller station. Moore gave him her fifties; he then asked for twenties, which she gave as well. Defendant left with about $2,000.

Moore described defendant as a large African-American man who was about 6' 2" to 6' 3" tall, 250 pounds and about 35 years old. She was intimidated by his size. He wore a black or dark fisherman's hat, a large coat, a black shirt, and black pants.

Aresha Auzenne, another teller at the bank, saw Moore silently remove money from her drawer and slide it to defendant, who then told Moore, "And your 20s too." Auzenne described him as a tall African-American man with a "husky" build and wearing a "fisherman's" hat and a large jacket.

*June 13 Robbery*

On June 13, 2011, Morgan Young was working as a teller at a U.S. Bank in Rancho Cordova. Defendant, who was waiting in line, walked up, put his hand on the teller window, and said, "This is a robbery. Give me your 100s, 50s and 20s." Young replied, "Excuse me?" Defendant reiterated his demand. Young gave defendant a packet of money containing a dye pack and a tracker. Defendant ripped it apart, exposing the

2

dye pack and tracker. She then gave defendant all of the twenties in her drawer. Defendant responded, "Give me your 100s and 50s." Young pulled out the twenties from her second drawer and told defendant that she did not have any hundreds. She offered tens to defendant. He said nothing, took the $800 to $1,000 in cash, and walked out the door.

Young's coworker, Matthew Loiseaux, heard Young say, "Lock the door. I was robbed," as defendant ran out the door. Loiseaux, who had a good view of the robber, described him as a large, African-American male.

*July 2 Robbery*

Lauren Rockwell was a teller at the U.S. bank in Rancho Cordova on July 2, 2011. She was at her closed window counting deposits when she looked up to see defendant in front of her; she recognized him as the same man who robbed the bank a few weeks prior. She described him as tall, very big, and wearing a ball cap and a "tourist-type" button up shirt that was cream colored with green palm trees.

Rockwell froze when she saw defendant. He approached her window but backed off a couple of steps when a coworker told him that Rockwell's window was closed.[2] Defendant then rushed to Rockwell's window. Reaching into his waistband, defendant told her to give him all the money. Rockwell, who thought defendant was reaching for a gun, was scared. She pushed the money, about $1,000, towards defendant. Defendant took the money and left the bank.

Young, who was again working as a teller that day, saw defendant walk into the bank. This time he wore a green baseball cap, but had the same shirt and glasses he wore on the June 13 robbery. The assistant manager walked up to defendant and asked if he

---

[2] A sign stating that the window was closed was posted on Rockwell's window.

could help; defendant said, "No, I need to cash a check."  When Young saw defendant rob Rockwell, she pulled the alarm.

When defendant was arrested, he was wearing a silver and gold-toned watch and copper, wire-rimmed glasses.  Young identified the watch and glasses as being worn by defendant during the robberies.

*Prior Strike and Felony Allegations*

A January 24, 1994, federal plea agreement was admitted as evidence at trial.  In the agreement, defendant admitted that on four separate occasions he entered a federally insured financial institution, and robbed a teller of money by "making a verbal demand."  He also understood that he was pleading to "unarmed bank robbery."

The information alleged five prior strike and serious felony convictions:  the four federal robbery convictions and a 2003 conviction for robbery.  At the bifurcated hearing on the nature of the priors, the prosecution presented separate packets for the federal priors and the state robbery conviction.

People's Exhibit 45B contained the judgment in federal case No. CR-93-0609-MHP, defendant's guilty plea and application to plead guilty in that case, and a complaint in federal case No. 3-93-733-PJH.  The judgment states that defendant was convicted by a guilty plea of four counts of unarmed bank robbery.  (18 U.S.C. § 2113(a).)  In the plea agreement, defendant pleaded guilty to counts one through four of the indictment, each of which charged him with "unarmed bank robbery."  Defendant's guilty plea admitted as facts that he entered four separate federally insured financial institutions and robbed a teller of a specific amount of money by "making a verbal demand."  In the application to plead guilty, defendant admitted that in each count he "enter[ed] the bank and approached [the] teller and demanded money."  The complaint alleged three separate bank robberies

4

in which defendant, by "force, violence and intimidation," robbed a teller at each of the three banks.[3]

People's Exhibit 46A included defendant's change of plea hearing, where he pleaded no contest to the prior 2003 California robbery.

The jury sustained all five prior conviction allegations. The trial court found the five priors were serious and violent felonies and strikes.

## DISCUSSION

### I.

### *Prior Uncharged Misconduct*

Defendant contends the trial court erred in admitting the four federal bank robberies as evidence of prior uncharged misconduct. We disagree.

Defendant did not object to admitting the federal priors as uncharged misconduct evidence. On appeal, he claims that he objected to the evidence when counsel raised a concern, at the in limine hearing, that defendant's mental state was "unsettled" when he entered the guilty pleas to the federal charges in 1994.

This does not preserve his claim on appeal. The failure to raise a timely and specific objection to the admission of evidence forfeits the objection on appeal. (*People v. Doolin* (2009) 45 Cal.4th 390, 438.)

Anticipating our ruling, defendant claims trial counsel was ineffective in failing to object to the federal priors.

To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result.

---

[3] This complaint is not part of the record of the prior conviction as it has a different case number than the case in which defendant entered his guilty pleas to the four federal counts, and also because defendant pleaded to the charges in the indictment, not those in the complaint.

(*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693, 696].)  Defense counsel's determination whether to object to evidence is a tactical decision which is entitled to substantial deference; " ' "failure to object seldom establishes counsel's incompetence."  [Citation.]' " (*People v. Majors* (1998) 18 Cal.4th 385, 403.)

The case against defendant was compelling and he cannot demonstrate that the introduction of the federal priors caused him to suffer prejudice.  Multiple witnesses at each robbery identified defendant as the perpetrator.  Video recordings of two of the robberies and digital video snapshots of all three robberies were also presented to the jury.  The prior robbery convictions were minimally prejudicial, containing few facts regarding his conduct during those robberies.  Admitting the prior robberies could not prejudice defendant in the context of the case against him.

Since defendant has not shown prejudice, his claim fails.

II.

*Mental Health Testimony*

Defendant contends the trial court erred in barring testimony from his sister regarding his mental health at the time of his guilty pleas to the federal priors.

An Evidence Code section 402 hearing was held on whether to admit the testimony of defendant's sister, Glenda Johnson, regarding her brother's mental status and demeanor when he pleaded guilty to the federal charges in 1994.

Johnson testified that she was a "career student" with a degree in human science who previously was a nurse.  She is a certified nursing assistant and had worked in that capacity for 23 years.  She worked in a number of subject areas including:  geriatrics, neonatal, the psychiatric ward, hospice, and private-duty care.  While working as a certified nursing assistant, she had the "opportunity to observe people whose mental wellness was not up to par."  As part of her duty, she would make notes in logs regarding the behavior and symptoms of her patients.

6

In 1994, Johnson lived on the naval base located on Treasure Island. Defendant lived in Oakland at the time. She maintained contact with defendant, seeing him about twice a month. Johnson noticed that his behavior was "really sporadic, really distal." He suffered from "social anxiety," in that he did not want to interact with large groups of people and "he would disappear." He had these symptoms before, but they got "progressively worse" over the years. In January 1994, defendant "began to babble and talk a lot to himself." He was never hospitalized, but had been treated for his problems. According to Johnson, defendant's major problem was fear of "people, places, and things."

The defense argued that, under Evidence Code section 870, subdivision (a), Johnson was entitled to give her lay opinion regarding defendant's mental state at the time he entered the earlier federal plea agreements because she was an "intimate acquaintance." The trial court found Johnson did not qualify as an expert witness and her relationship with defendant at the time in question was insufficient to qualify her as an intimate acquaintance. The court also found the evidence was subject to exclusion under Evidence Code section 352 because the probative value was outweighed by the undue consumption of time that would result from its admission and the testimony would tend to confuse or mislead the jury.

"A witness may state his opinion as to the sanity of a person when: [¶] (a) The witness is an intimate acquaintance of the person whose sanity is in question; [¶] (b) The witness was a subscribing witness to a writing, the validity of which is in dispute, signed by the person whose sanity is in question and the opinion relates to the sanity of such person at the time the writing was signed; or [¶] (c) The witness is qualified under Section 800 or 801 [of the Evidence Code] to testify in the form of an opinion." (Evid. Code, § 870.)

A lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of her testimony. (Evid. Code,

7

§ 800.)  A qualified lay witness may give an opinion as to sanity, or as to a mental condition less than sanity.  (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1228.)  Admission of lay opinion testimony is within the trial court's discretion, which will not be disturbed unless a clear abuse of discretion appears.  (*People v. Mixon* (1982) 129 Cal.App.3d 118, 127.)  Likewise, we review decisions under Evidence Code section 352 for abuse of discretion.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

It was not an abuse of discretion to decline to admit Johnson's testimony on defendant's mental state when he entered the federal guilty plea.  Although she was defendant's sister, Johnson admitted seeing defendant only twice a month around the time he entered the plea.  The trial court could reasonably conclude that, at the time, Johnson was not a sufficiently intimate acquaintance of defendant to render an opinion regarding his mental state when he entered the federal plea.  As the Supreme Court stated in interpreting the predecessor to Evidence Code section 870, former Code of Civil Procedure section 1870, subdivision 10:[4]  "It is often a difficult matter to determine whether a witness whose opinion is sought to be had of the mental condition of another, is an intimate acquaintance of his, within the purview of the section, or not.  What the meaning of the term 'intimate acquaintance' is has not been clearly defined.  To be such an acquaintance necessarily requires a familiarity with the mental temperament of the person the soundness of whose mind is in question.  But this familiarity is not to be measured exclusively by an acquaintanceship for any particular length of time.  Time must, of course, enter as an element, but not as the controlling element.  One who has known a person for years may not have had sufficient opportunity for observation to be capable of forming an opinion as to his mental condition at any given time."  (*In re Estate of Budan* (1909) 156 Cal. 230, 233.)

---

[4]  Evidence Code section 870 recodified former Code of Civil Procedure section 1870, subdivision 10.  (See, *People v. Crosier* (1974) 41 Cal.App.3d 712, 723.)

8

Nor was it an abuse of discretion to exclude the evidence under Evidence Code section 352.  Johnson testified that defendant was fearful and had social anxiety, neither of which impedes the competence to enter a guilty plea.  She did testify that defendant babbled and talked to himself at the time, which could have some minimal relevance to his ability to enter the guilty plea.  However, the trial court was within its discretion to weigh this minimal relevance against the risk of wasting time and confusing the jury by focusing on the tangential issue of defendant's mental health in early 1994 and, ultimately, to find Johnson's testimony unnecessary.

III.

*Prior Federal Convictions*

Defendant contends there is insufficient evidence to support the trial court's finding that the four federal bank robbery convictions were serious felonies and strikes.  The Attorney General concedes defendant's claim.  We agree.

To find defendant sustained a prior felony conviction within the meaning of the "three strikes" law (§ 667, subd. (d)) and a prior serious felony within the meaning of section 667, subdivision (a), the prior conviction must be a "serious felony" as defined by section 1192.7, subdivision (c).

In determining whether a prior conviction is a serious felony and a strike, "the trier of fact [may] look to the entire record of the conviction" but may look "no further." (*People v. Guerrero* (1988) 44 Cal.3d 343, 355, italics omitted.)  The record of the conviction includes all relevant documents found in the court file of the prior conviction. (*People v. Castellanos* (1990) 219 Cal.App.3d 1163, 1172.)  Hearsay evidence is inadmissible unless the statements fall under an exception to the hearsay rule.  (*People v. Reed* (1996) 13 Cal.4th 217, 230.)

"[I]f the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense.

9

[Citations.] In such a case, if the serious felony nature of the prior conviction depends upon the particular conduct that gave rise to the conviction, the record is insufficient to establish that a serious felony conviction occurred." (*People v. Miles* (2008) 43 Cal.4th 1074, 1083 (*Miles*).)

*Miles* involved 18 United States Code section 2113(a), which embraced "two distinct categories of offenders." (*Miles, supra*, 43 Cal.4th at p. 1080.) The first paragraph included persons who by force and violence or by intimidation took from the person, or presence of another, anything of value belonging to, or in the custody of, a financial institution. (*Id.* at pp. 1080-1081.) The second paragraph included anyone who entered the building of a financial institution with the intent to commit any felony affecting the institution, or to commit any larceny. (*Id.* at p. 1081.) Under California law, a serious felony for purposes of section 667 includes a "bank robbery," (§ 1192.7, subd. (c)(19)) which is not a substantive crime under California law. Bank robbery is defined, however, as taking anything of value belonging to, or in the custody of, a financial institution by force, violence, or intimidation from the person or presence of another. (*Id.* subd. (d).) This is substantially equivalent to the offense in the first paragraph of the 1976 version of 18 United States Code section 2113(a); however, the conduct described in the second paragraph would only be second degree burglary under California law, which is not a serious felony. (*Miles, supra*, at pp. 1081-1082 & fn. 6.)

Turning to the sufficiency of the evidence to establish the elements of the recidivist finding, *Miles* stated that a "court document, prepared contemporaneously with the conviction, as part of the record thereof, by a public officer charged with that duty, and describing the nature of the prior conviction for official purposes, is relevant and admissible on this issue. [Citation.]" (*Miles, supra*, 43 Cal.4th at p. 1082.)

The primary evidence in *Miles* was a judgment and commitment order stating that the nature of the offense was " '18 U.S.C. 2113 (a) (d) (e), armed bank robbery.' " (*Miles, supra*, 43 Cal.4th at p. 1079.) *Miles* acknowledged "the trier of fact may presume

10

that an official government document, prepared contemporaneously as part of the judgment record and describing the prior conviction, is truthful and accurate. Unless rebutted, such a document, standing alone, is sufficient evidence of the facts it recites about the nature and circumstances of the prior conviction." (*Id*. at p. 1083.) A trier of fact is also entitled to draw reasonable inferences from the document at issue. (*Ibid*.)

*Miles* concluded that there were various rational bases for an inference that the judgment intended to describe the robbery form of 18 U.S.C. section 2113(a) rather than the second degree burglary form. First, the inclusion of a description in addition to a bare citation to the statute indicated an attempt to delineate the conduct involved (absent contrary indicia), rather than being mere surplusage. (*Miles, supra*, 43 Cal.4th at p. 1085.) Second, while the statute itself does not use the term "bank robbery," the description in the first paragraph corresponded closely to the common legal definition of robbery, as opposed to the second paragraph's commonly understood description of burglary, which strongly supported the judgment's use of the phrase as indicating a violation of the first paragraph. (*Id.* at pp. 1085-1088.) In addition, references in the judgment to other subdivisions of the statute related to taking a hostage and placing a person in jeopardy through the use of a dangerous weapon further indicated the commission of a robbery rather than a burglary. (*Id*. at p. 1088.)

The present case is distinguished from *Miles* because the evidence here does not establish the necessary element of force or fear to constitute a robbery under California law. Unlike *Miles*, here defendant pleaded guilty to unarmed bank robbery rather than armed bank robbery. This case also differs from *Miles* in that it lacks any reference to him taking a hostage or placing someone in jeopardy. The facts of the prior offenses simply show that the defendant went to a bank teller, made a verbal demand, and received money. These facts do not supply the force or fear element necessary to constitute robbery.

11

Since the evidence is insufficient to support a finding that defendant's federal priors constituted a robbery under California law, we shall reverse the serious felony and strike findings as to those convictions and remand, at the prosecution's election, for retrial (*People v. Monge* (1997) 16 Cal.4th 826, 845) or resentencing.

## IV.

### *Due Process*

Defendant contends the trial court's finding that the federal priors were serious felonies and strikes violated his due process rights as they were not supported by substantial evidence. This contention merely duplicates his prior contention regarding the prior federal convictions. Having already accepted his substantial evidence claim, we decline to address this contention.

## V.

### *Jury Trial*

Defendant contends he has a Sixth Amendment right to a jury trial on whether his prior federal convictions qualified as serious felonies and strikes. This claim has already been rejected by the California Supreme Court. (*People v. McGee* (2006) 38 Cal.4th 682, 708-709.) Following *McGee*, we reject this claim.

## DISPOSITION

The trial court's findings on the four prior federal convictions, prior convictions two through five, are reversed.  The cause is remanded to the trial court for resentencing or, at the prosecutor's election, for retrial on prior convictions two through five.  In all other respects, we affirm the judgment.

        RENNER        , J.

We concur:

 BLEASE       , Acting P. J.

 HULL        , J.