[Civ. No. 24687. Second Dist., Div. One. Mar. 15, 1961.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Respondent, v. STEVENSON AND COMPANY (a Corporation) et al., Defendants; ROBERT LEONARD et al., Appellants.

104

Anson, Gleaves & Larson, John B. Anson and Milnor E. Gleaves for Appellants.

George C. Hadley, Ray M. Steele, George W. Miley, Charles E. Spencer, Jr., and Robert W. Vidor for Respondent.

WOOD, P. J.—Defendants appeal from a judgment condemning a portion of their real property for highway purposes. The amounts awarded were: $182,600 for the property taken; and $142,000 as severance damages, less $20,000 which was found to be the amount of benefits accruing to the remaining property.

Appellants contend that the award was inadequate; and that certain instructions and rulings were erroneous.

Appellants own a triangular parcel of real property, consisting of 9.96 acres, at the northwest corner of the intersection of Sepulveda Boulevard and Centinela Avenue in Los Angeles County. Sepulveda extends in a northerly and southerly direction, and Centinela extends northwesterly and southeasterly, thereby forming an angle of approximately 45 degrees at the northwest corner of the intersection. Appellants' property, commencing at that acute angle, extends northerly along Sepulveda a distance of 944 feet, and extends northwesterly along Centinela a distance of 1,260 feet. The property is known as "Airport Village" and is improved as a marketing center and trailer park. Along the frontage on Sepulveda there are: a trailer park office building; a restaurant; gasoline service station; and an appliance store. To the rear of those business establishments, and about 150 feet from Sepulveda, there is a large building in which there are a general food store, five restaurants, and a bakery. South of that market building, and fronting on Centinela, there is a building where hamburgers and ice cream are sold. West of the market building, there is a trailer park which covers

approximately 4½ acres. The open area of the property is paved and is used for automobile parking. There are 11 driveways on the Sepulveda frontage for entering and leaving the premises; and there are 2 such driveways on the Centinela frontage. Defendants operate the trailer park, and other persons operate the other business establishments under leases which provide for the payment to defendants of a percentage of the gross receipts as rental.

In this proceeding the state sought to obtain, for the purpose of constructing a freeway, a triangular parcel in the northeast corner of appellants' property, ''Airport Village.'' Said triangular parcel, commencing at the northeast corner of ''Airport Village,'' extends southerly along Sepulveda for a distance of 723 feet, and extends along the north boundary of the village for a distance of 210 feet. The other side of the triangular parcel is 600 feet long. The triangular parcel, consisting of 1.416 acres, includes the trailer park office building, a restaurant building, and 5 driveways. The acquisition of the parcel will reduce the frontage of appellants' property on Sepulveda from 944 feet to 141 feet. By reason of the construction of the freeway, Sepulveda will be rerouted so that, commencing at a point approximately 141 feet north of the south line of appellants' property, Sepulveda will curve in an easterly direction (away from the property) and extend under the freeway (by means of an underpass) and then curve in a westerly direction and rejoin Sepulveda, as presently located, beyond the northerly line of appellants' property. The freeway will be elevated, and its paved portion will be approximately 20 feet higher than appellants' property at the northerly line thereof and approximately 30 feet higher than appellants' property at the underpass on Sepulveda.

 Appellants contend that the court erred in giving the following instruction: ''In considering damages to the remaining property of the defendants in this proceeding by reason of loss of view from Sepulveda Boulevard, you shall disregard any testimony concerning loss of view on Sepulveda Boulevard from any point north of the northerly line of Airport Village. The right of private property to be viewed from the street upon which it abuts extends only to that portion of the street fronting the property.'' Appellants argue that it was error to give that instruction, because (1.) the extent of the loss of view of the remaining property from

Sepulveda was a question for the jury, and the instruction improperly limited the jury in its consideration of the extent of loss of that view; and (2) the instruction incorrectly delineates the extent of the easement of view, from Sepulveda, which would be lost as a result of the improvement. They argue further that the court ''found'' that the view from Sepulveda would be substantially impaired by the proposed improvement, and that under such a circumstance the extent (or distance or area) of the impairment was a question for the jury. They argue further that the easement of view (from the highway) of property abutting a highway extends that distance up and down the highway which is reasonable under the facts of a particular case; that the evidence was uncontradicted that a view of their property from approximately 800 feet north of the north line of the property would be lost by the proposed improvement; that under such a circumstance the court erred in instructing the jury that, in considering damages, it should not consider any testimony as to loss of view from a point beyond the northerly line of the property. As above stated, appellants argue that the court ''found'' that the view of their property would be substantially impaired by the freeway. It seems that such argument is based upon an instruction which was given at appellants' request. That instruction was: ''You are further instructed that defendants, as the owners of property facing on Sepulveda, have an easement or right of having their property viewed from Sepulveda Boulevard by travelers along Sepulveda Boulevard, including pedestrians and occupants of vehicles, public and private. Such right is called an 'easement of reasonable view' and is a separate and distinct right from the right of ingress and egress that I have described to you. I instruct you that such right of reasonable view will be substantially impaired by the proposed improvement in cutting off a portion of the Sepulveda Boulevard frontage. It is for you to determine the extent of that impairment in money, if in your opinion it has a monetary value.'' It thus appears that the jury was instructed at appellants' request that there would be impairment of view from Sepulveda. In *People* v. *Ricciardi,* 23 Cal.2d 390, 404 [144 P.2d 799], it was said: '' [I]t was for the trial court to determine whether the obstruction caused by the underpass [to be constructed on the property sought to be taken in eminent domain in that proceeding] would unreasonably cut off defendants' property from visi-

bility by travelers on the main highway, and, the right being substantially impaired, the amount of damage was a question for the jury.'' As said in *Laguna Salada etc. Dist.* v. *Pacific Dev. Co.,* 119 Cal.App.2d 470, at page 475 [259 P.2d 498] : ''The only matter for the jury in condemnation cases is the question of value or compensation. [Citation.] All else is to be tried to the court.'' ▇ In the present case the question as to whether there would be impairment of reasonable view from Sepulveda, by reason of construction of the freeway, was a question for the trial judge, and also the question as to the extent of such impairment, in terms of distance or area, was a question for the trial judge; and the question as to the extent of such impairment, in terms of money or amount of damage (resulting from such impairment of view as determined by the trial judge), was a question for the jury. ▇ After having instructed the jury that there would be impairment of view, the court gave the further instruction (first above quoted) to the effect that the jury should disregard testimony concerning loss of view from Sepulveda from points north of the north line of appellants' property. In *County Sanitation Dist. No. 2* v. *Averill,* 8 Cal.App.2d 556, 561 [47 P.2d 786], it was said : ''An owner, whose land is being condemned in part, may not recover damages in the condemnation action to the remainder of his land caused by the manner in which the works are to be constructed or operated on the lands of others. The detriment for which he may recover compensation is that which will result from the operation of the works upon his land alone.'' (See also *People* v. *Symons,* 54 Cal.2d 855, 861 [9 Cal.Rptr. 363, 357 P.2d 451].) Mr. Evans and Mr. Culver, expert appraisal witnesses called by plaintiff, testified to the effect that there would be damage for loss of view commencing at the northerly boundary line of the property. Mr. O'Brien, an expert appraisal witness called by defendants, testified that it was his opinion that ''action could be taken on the view starting about'' where the ''curve begins to turn [on Sepulveda north of the property line].'' The judge and jury, in the presence of counsel for the parties, viewed the premises and area involved here. It thus appears that there was substantial evidence from which the trial judge could find there would be no impairment of reasonable view, from Sepulveda, north of the north line of appellants' property. There was no evidence concerning loss of view from Sepulveda south of the south line of the property. The court did not err in giving

the instruction, first above quoted, which was requested by plaintiff (state). The first sentence of that instruction, to the effect that the jury should disregard testimony concerning loss of view from Sepulveda north of the north line of appellants' property, was in effect a declaration or finding by the trial judge that there would be impairment of view of the property, from Sepulveda, commencing at the north line of the property. That declaration or finding was a determination of a question which was for the trial judge. The second or last sentence of said quoted instruction is a general statement with respect to property generally and is to the effect that the right of reasonable view of any property abutting a highway is only from the portion of the highway in front of the property. That second sentence or general statement, as applied to the property herein, is to the same effect as the first sentence with respect to loss of view from the north line. In other words, both sentences of said instruction limit the reasonable view, from the north, to a view from the north line of the property. As above stated, there was no evidence concerning loss of view from south of the south line. Under such circumstances, it was not necessary to include the second sentence in the instruction; and it is not necessary to determine herein whether the general statement (with respect to property generally) is a correct statement applicable to all cases involving condemnation of property abutting a public highway. The second or general statement was not inconsistent with the first sentence, and it did not detract from the specific declaration or finding in the first sentence as to the place from which there was impairment of view.

■ Appellants contend that the court erred in giving the following instruction: "In your consideration of damages to the remaining property you shall consider only such damages as accrue by reason of the severance of the part taken and by reason of the construction of the freeway improvement in the manner proposed upon the property taken and the streets or highways upon which defendants' property now fronts." Their argument with respect to this contention is in substance the same as their argument as to the preceding contention. The court did not err in giving this instruction.

■ Appellants also argue that since the jury was instructed that, in considering damages, it should not consider any loss of view from Sepulveda beyond the north boundary of the property, the court should have instructed the jury not

to consider any benefits from the new view beyond the north line in determining benefits. In any event, the appellants did not request that such an instruction be given. This contention is not sustainable.

 Appellants contend that the court erred in instructing the jury as follows: "The fact, if it is a fact, that the owner is participating in the profits, if any, from any business conducted upon the property is not to be considered by you as an element adding to the value of the property. Profit, if any, from a business is too speculative, uncertain and remote and is not a proper basis of ascertaining market value." They also contend the court erred in instructing the jury as follows: "Injury or inconvenience to a business is not compensable, and does not form an element of, and cannot be taken into consideration by you in arriving at, the damages in this case. In determining the damages in this case to be awarded to the defendants, you must consider the damage to the property only and not take into consideration any damage to or loss of any business conducted on the property." Appellants argue that defendants were not conducting any business on the property; that there was no evidence of any profits of a business, or any opinion of value by any witness based on that element; that under such circumstances the court by giving the instructions regarding profits and damage to a business, without making it clear to the jury that the court was not referring to rental income, led the jury to believe that past or prospective rental income was not to be considered in determining market value of the property taken or in determining severance damages. In *People* v. *Dunn,* 46 Cal.2d 639, 641 [297 P.2d 964], it was said: "It is settled that evidence of profits derived from a business conducted on the land is too speculative, uncertain and remote to be considered as a basis for ascertaining market value." In *People* v. *Ricciardi,* 23 Cal.2d 390, 396 [144 P.2d 799], it was said: "[I]t has been held in this state that injury to the business of the owner or occupant of the property does not form an element of the compensating damages to be awarded [citation]. This is so because it is only the value of, and the damage to, the property itself, which may be considered. A particular business might be entirely destroyed and yet not diminish the actual value of the property for its highest and best use." (See also *People* v. *Ayon,* 54 Cal.2d 217, 226 [5 Cal.Rptr. 151, 352 P.2d 519].) In the present case, there was evidence that appellants operated the trailer park, and there was evidence that defendant Mr. Leonard was

a partner in the business conducted at the hamburger stand. Immediately preceding the giving of said instructions, the court instructed the jury that in arriving at the fair market value of the property one of the elements the jury might consider was the reasonable rental value of the property. Defendants did not offer an instruction clarifying the instructions which they now assert misled the jury. Appellants' motion for a new trial was denied. It cannot properly be concluded that the jury was misled by those instructions. The court did not err in giving the two instructions.

▆ Appellants contend that the court erred in rulings as to the admissibility of certain testimony of Mr. Williams, an expert appraisal witness called by them. Mr. Williams testified, on direct examination, as to the amount of gross rentals from the property for the year 1958. He was then asked to state the amount of net income for that year. Plaintiff objected on the ground that no foundation was laid. After further questions were asked regarding a foundation, Mr. Williams then testified that he obtained the amount of net rentals by deducting from the amount of gross rentals the amount of actual expenses as posted in the books of account of Mr. Leonard. Said objection was renewed and sustained. Appellants argue that Mr. Williams, as an expert witness, should have been allowed to state the amount of net rentals as a detail of one of the ''facts'' upon which his conclusions of value are based. They argue further that the amount of net income was a vital part of defendants' case; that by the trial court's refusal to receive the testimony of Mr. Williams as to net income, the amount of net income was ''kept from the jury.'' As above indicated, that proposed testimony was offered on direct examination of the expert witness. Whether or not such detailed testimony should be received was a matter within the discretion of the trial judge. It cannot be said that the ruling was erroneous. ▆ It seems to be appellants' argument that Mr. Williams' testimony as to net rentals was also admissible on the ground that Mr. Williams had knowledge of the items of expense as a result of his examination of appellants' books of account. There was no testimony that Mr. Williams kept the books of account or that he had any knowledge as to the mode of their preparation. There was no other evidence as to the mode in which the books were kept. Mr. Williams' testimony as to net rentals would be hearsay. It is to be noted that neither of the appellants testified regard-

ing the net rentals from the property, and they did not offer any evidence regarding net rentals other than the evidence above mentioned.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied April 3, 1961, and appellants' petition for a hearing by the Supreme Court was denied May 10, 1961. Schauer, J., was of the opinion that the petition should be granted.