[Civ. No. 22549. First Dist., Div. One. Mar. 14, 1966.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. ROBERT WASSERMAN et al., Defendants and Appellants.

718

M. H. Barker and Thomas G. Baggot for Defendants and Appellants.

Harry S. Fenton, Holloway Jones, Jack M. Howard, William R. Edgar and Richard S. Levenberg for Plaintiff and Respondent.

SULLIVAN, P. J.—This is an eminent domain proceeding brought to acquire for state highway purposes certain real property in Sonoma County just outside the city limits of Santa Rosa. The property condemned (Parcel 1) is a portion of a larger parcel owned by defendant Robert Wasserman and under lease to his codefendant Market Wholesale Grocery Co. (Market). After a jury trial, the court below entered a judgment in condemnation awarding all defendants as their interests may appear[1] damages in the sum of $5,750 with interest.[2] Wasserman and Market appeal from the judgment. In our separate consideration of the several questions raised on appeal, we discuss *infra* the facts pertinent to each. At this point we set forth the general factual background.

In the main, there is no dispute about the facts. Wasserman is the owner of certain property located just west of the Santa Rosa city limits and consisting of 54,380 square feet. It is leased[3] to Market which conducts a wholesale grocery business thereon. There was testimony that the property had been similarly used since at least 1937 and that the highest and best use of the property in its before condition was for a wholesale grocery company.

The property is improved with a large warehouse containing offices. Alongside the structure is a paved yard used by Market for the parking and maneuvering of trucks in connection with its business. In its actual operation Market's business involves the receipt of merchandise brought in by various truckers or picked up by Market itself, the internal handling of the same and its eventual distribution to grocers in the area. In short, Market takes merchandise in and ships it out. The operation of the business consists almost entirely of pick-ups and deliveries by large trucks and trailers. From this warehouse Market services an area extending as far north as Fort Bragg, east to

[1]Named as defendants were: Wasserman, Market, Title Insurance and Trust Company, as trustee and County of Sonoma. The judgment ordered and decreed that the above title insurance company had no interest in the property and was not entitled to compensation. It also made provision for establishing taxes and assessments due and owing the County of Sonoma. Neither the title insurance company nor the county is involved in this appeal.

[2]The jury returned a verdict finding (1) that the fair market value of the land condemned was $2,000; and (2) that the severance damages to the remainder of the property were $3,750.

[3]The term of the lease is 20 years, commencing on September 1, 1959 and ending on August 31, 1979.

Vallejo and Napa and south to Marin County, Oakland and San Jose.

The subject property is bounded on the north by Holbrook Street and on the east by Roberts Avenue. Iowa Street intersects Holbrook from the north immediately across from the property and Decoe Street similarly intersects[4] Holbrook approximately 100 feet to the west of the western boundary of the property. Prior to the construction of the freeway for which Parcel 1 was taken, Iowa and Decoe Streets and Roberts Avenue were all through streets to the north by means of which defendants' property had access to the general system of streets in Santa Rosa and the vicinity. The freeway, designated as Highway 12, runs in a general easterly and westerly direction just north of defendants' property, thereby cutting across all of the aforementioned three streets. After the construction of the freeway, therefore, these three streets were closed south of the freeway,[5] thus abolishing direct access from defendants' property to any point north. Thus, before construction of the freeway, the shortest and most direct route to the central business section of Santa Rosa was north via Iowa Street or Roberts Avenue to West 3d Street and then east along West 3d. The alternate route, the one defendant Market and all its customers are now compelled to take, is south on Roberts Avenue, east on Sebastopol, then north on Olive and Railroad Streets to West 3d and then east on West 3d. This latter route is longer by approximately a third of a mile, involves heavy traffic on Sebastopol Avenue and requires a difficult left-hand turn from Roberts to proceed east on Sebastopol.

Condemnation was sought as to Parcel 1, a boomerang-shaped parcel at the northern tip of the property with an area of 3,960 square feet. The freeway itself was not to be built on any part of the land taken but, as previously noted, was to be located just north of it. The record shows that the part taken was being acquired not for the construction of the freeway proper but to ''curve out'' the intersection of Holbrook and Roberts so as to facilitate turning in that intersection. This was deemed necessary by plaintiff's engineers since the freeway, by cutting across an angle of the intersection, would narrow it.

---

[4] Iowa and Decoe Streets do not continue across Holbrook.

[5] The freeway is elevated at all three streets on a solid earth enbankment varying in elevation between 24 to 30 feet.

Defendants called two valuation witnesses, Carl Goslovich, vice-president, general manager and a stockholder of Market and Clifton McCluskey, a Santa Rosa realtor and appraiser. Goslovich testified that the fair market value of the parcel taken was $3,564 and that the severance damages to the remainder of the property were $94,390. McCluskey testified that the value of the part taken was $4,000 and that the severance damages were $51,500. Each witness based his opinion as to severance damages on two factors: (1) damage to the property because of the closing of all of the aforementioned streets with the resultant loss of direct access thereby to the general system of streets; and (2) damage to the property because of the loss of a parking and maneuvering area for large trucks and trailers picking up merchandise at, and delivering it to, Market's warehouse. The trial judge ruled that the alleged loss of access embraced within the first factor was noncompensable and that any evidence bearing thereon was inadmissible in the case. As a result of this ruling and the elimination of such factor of damage from the opinion as to severance damages, Goslovich's opinion was reduced by $10,000 to $84,390 and McCluskey's opinion was reduced by 50 percent to $25,750.

In rebuttal plaintiff presented two valuation witnesses: Hal Bolla, Jr., a local real estate appraiser and Michell N. Abramson, a Santa Rosa realtor and appraiser. Bolla testified that the fair market value of the taken Parcel 1 was $1,600 and that there were severance damages in the amount of $3,100 to the remaining property. Abramson opined that the fair market value was $2,000 while concluding that there were no severance damages. His basis for this latter opinion was that in the after condition the general situation of the property would be very similar to what it had been prior to the taking; the existing conditions would not really be changed. Both witnesses testified that not only would the closing of streets not create any parking problems, it would really not at all affect the preconstruction parking situation. In fact, Abramson testified that as a result of the street closings the property in general would be ''greatly improved'' and specifically that the parking would be improved.[6]

In addition to Bolla and Abramson, plaintiff called three other witnesses on the question of severance damages: Philip

[6] It should be noted that Bolla further testified that he did not think it made any difference at all whether the streets were open or closed because there was parking accommodation in either event.

Day, a trucking executive, John G. McClone, a traffic engineer for the Sonoma County Road Commissioner and Edwin R. Parks, an industrial engineer. Each of these men had apparently compared the before and after condition of the remaining property in regard to the problem of parking; each expressed the opinion that the operation of defendants' business would not be that curtailed or adversely affected by the taking and the resultant street closings. Specifically, Day testified that the taking would not create any parking problems; McClone testified that there were no county plans extant at that time to restrict or prohibit parking, even in light of the present proposal to close streets in the manner proposed by the plans; Parks testified that by proper utilization of the shoulders of the public streets the parking situation in the after condition would be equally as good as in the before condition.

### Impairment of access.

Defendants contend on appeal that the court erred in ruling that their easement of access was not substantially impaired. This ruling was the culmination of extensive proceedings had outside the jury's presence during the testimony of defendants' valuation witness Goslovich. In the course of these proceedings the learned trial judge concluded on the authority of *People* ex rel. *Dept. of Public Works* v. *Symons* (1960) 54 Cal.2d 855 [9 Cal.Rptr. 363, 357 P.2d 451] and *County Sanitation Dist. No. 2* v. *Averill* (1935) 8 Cal.App.2d 556 [47 P.2d 786], cited therein, that damages for the impairment or diminution of an easement of access were not recoverable where, as in the instant case, they were caused by the construction, maintenance or operation of improvements made on the lands of others. The court's reasoning was that the closing of Iowa and Decoe Streets and of Roberts Avenue resulted from "the construction of the freeway proper" which, as we have said, was north of defendants' property and that damage resulting therefrom had "nothing to do whatsoever" with the condemnation of the corner of defendants' property. While seemingly not disclaiming the benefit of such ruling, counsel for plaintiff took the position during the above proceedings that the next intersecting street rule announced in *Bacich* v. *Board of Control* (1943) 23 Cal.2d 343 [144 P.2d 818] was also applicable and that under such rule no impairment of access could occur since defendants' right of access extended in both directions to the next intersecting street, his theory being that

after the construction of the freeway there would still be access westward along Holbrook Street to the intersecting Iowa and Decoe Streets even though these latter streets would be blocked by the freeway.[7] While the record gives some indication of the court's feeling that the rule announced in *Bacich* could also be strictly applied in accordance with the contention of plaintiff's counsel thereby precluding impairment, the court's ruling that the closing of the streets was not compensable was placed on the "stronger principle" announced in the *Symons* case.[8]

The jury were thereupon instructed that any damages allegedly resulting from the closing of Roberts Avenue, Iowa Street and Decoe Street constituted noncompensable items of damage; that "the rule is well established that the severance damage in a case of this sort must be severance damage from the taking of the piece of property which is actually being condemned and the construction of the improvement on the piece of property as distinguished from construction of some general improvement at a distance removed therefrom"; and that evidence bearing upon such alleged damages was not to be considered by them.[9] As a consequence, the testimony of defendants' valuation witnesses Goslovich and McCluskey bearing upon this point was excluded and the opinions of said witnesses as to severance damages were reduced to the extent heretofore indicated.

The positions of the parties on appeal may be summarized as follows: Defendants contend that the closing of the above streets deprived their property of reasonable access to the

---

[7] Plaintiff's counsel acknowledged that such streets were barricaded within a very short distance north of the intersection but took the position that "the courts have adopted the rule only to the intersecting street for the reason that the line has to be drawn somewhere. . . ."

[8] At the conclusion of the proceedings outside the jury's presence the trial judge stated that "in my opinion there is no compensable item involved in the closing of Roberts, Iowa and Decoe Street by the construction of the freeway proper in the manner in which it is being done in this case."

[9] At the conclusion of the case, the jury were instructed as follows: "During the course of these proceedings you have heard references made to the closure of certain streets in the vicinity of the subject property. You are instructed that the closure of Roberts Avenue, Iowa Street and Decoe Street is not to be considered by you as a compensable element of damage to the remaining property in this case. Circuity of travel is not a compensable item, and in that respect, defendants in this action are in the same position as any other members of the general public using these streets and are not entitled, any more than any other member of the general public may be entitled, to compensation for such street closures."

general system of public streets, that the only remaining route to the central business district of Santa Rosa was longer and more difficult and that as a result their easement of access was substantially impaired. They argue that the trial court misinterpreted *Symons* in concluding that by that decision recovery for impairment of access must be denied where it results from construction on other property. Plaintiff on the other hand argues as it did below that there was no impairment of access since defendants retained access to the next intersecting street in both directions. It is notable that plaintiff, avoiding all reference to *Symons*, makes no argument for the upholding of the trial court's ruling on the basis on which it was made.

In *People* ex rel. *Dept. of Public Works* v. *Symons, supra,* 54 Cal.2d 855, upon which the learned trial judge based his ruling, the street abutting the defendants' residence was terminated at one end by the construction of a freeway. Condemnation of property for the freeway proper was effectuated in another proceeding. In the *Symons* proceeding a portion of the defendants' property was condemned in order to make the abutting street into a cul-de-sac and to provide a turn-around area. Damages were awarded only for the fair market value of the parcel taken and for the physical damage to the defendants' lawn and sprinkler system. The trial court, however, excluded expert testimony offered by the defendants as to the decreased value of their property arising from such factors as change of neighborhood, noise, dust, change of view, diminished access and other factors on the ground that such factors constituted noncompensable items of severance damages. The Supreme Court sustained the exclusion of such testimony holding that while "a condemnee is entitled to severance damages of the nature here sought by reason of the construction of an improvement on *condemned lands*" admission of such evidence was properly denied "as there has not been in this case . . . a *severance* entitling the defendants to the damages sought." (Italics added.) (*People* ex rel. *Dept. of Public Works* v. *Symons, supra,* at pp. 859-860 *passim.*)

The court held that the defendant owners were not entitled to compensation, as severance damages, for injury to their remaining land caused by the construction or maintenance of an improvement, namely the freeway itself, located on the lands of other persons and not lying on the property taken. (*People* ex rel. *Dept. of Public Works* v. *Symons, supra,* 54

Cal.2d 855, 860-861 *passim*; see also *Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 666 [39 Cal.Rptr. 903, 394 P.2d 719] ; *People* ex rel. *Dept. of Public Works* v. *Stevenson & Co.* (1961) 190 Cal.App.2d 103, 108 [11 Cal.Rptr. 675] ; *Rosenthal* v. *City of Los Angeles* (1961) 193 Cal.App.2d 29, 32-33 [13 Cal.Rptr. 824] ; *People* ex rel. *Dept. of Public Works* v. *City of Los Angeles* (1963) 220 Cal.App.2d 345, 362-363 [33 Cal.Rptr. 797] ; *County Sanitation Dist. No. 2* v. *Averill, supra,* 8 Cal. App.2d 556, 561;[10] see *People* ex rel. *Dept. of Public Works* v. *Bond* (1964) 231 Cal.App.2d 435, 439 [41 Cal.Rptr. 900].) In short, severance of the defendants' property was for the purpose of the cul-de-sac and not for the purpose of the freeway itself and in the absence of severance for the latter, loss caused by such improvement, including loss of access over the area occupied by the freeway, was not compensable.

We think that the trial judge correctly applied *Symons* in the instant case and therefore properly excluded defendants' expert testimony which considered the closing of the streets by the freeway as an item of severance damages. The record clearly shows that Parcel 1 was not condemned in these proceedings for the freeway proper but merely to round out the curve abutting defendants' property at the intersection of Roberts Avenue and Holbrook Street. This taking is analogous to the taking of the property in *Symons* for the purpose of rounding out the cul-de-sac. Here, as in that case, the taking was not for the construction of the freeway itself; here, as in that case, the public improvement causing the damage in issue was located on the lands of other persons. We find ourselves as much under the compulsion of *Symons* as apparently the trial judge did.

As we have said, plaintiff, for reasons unknown to us, does not argue on appeal that the trial court's ruling is sustainable on the authority of *Symons*. The parties therefore do not join issue on the crucial point decided below. Instead, both parties seem to have regarded the closing of the three streets as a potential basis of severance damages and to have raised the issue as to whether or not such condition constitutes a sub-

---

[10]In *County Sanitation Dist. No. 2* v. *Averill, supra,* cited in *Symons* and relied upon by the trial court herein, it was said: "An owner, whose land is being condemned in part, may not recover damages in the condemnation action to the remainder of his land caused by the manner in which the works are to be constructed or operated on the lands of others. The detriment for which he may recover compensation is that which will result from the operation of the works upon his land alone. [Citations.]" (8 Cal.App.2d 556, 561.)

stantial impairment of defendants' easement of access under California precedents.[11] In this dispute, defendants take the position that any vindication of the trial court's ruling predicated on *Symons* would in effect ignore applicable principles pertaining to easements of access as summarized and restated in *Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659 and *Valenta* v. *County of Los Angeles* (1964) 61 Cal.2d 669 [39 Cal.Rptr. 909, 394 P.2d 725].

As we point out *infra* (see fn. 12, *infra*), *Breidert* and *Valenta* were decided long after the trial of the instant case. Defendants seem to advance the thesis that these two cases abrogated the rule declared in *Symons* and thus make *Symons* inapplicable herein. *Breidert* discusses *Symons* in detail but does not state that the latter case is overruled or qualified in any way. Under the circumstances it would be presumptuous for us to say that *Breidert* (and *Valenta* which applied *Breidert*) had the *effect* of doing so. We therefore express no opinion as to whether, in a factual situation like the instant one, a condemnee by an appropriate pleading may engraft on such eminent domain proceedings an actionable claim for impairment of access or of view arising from the construction of an improvement on other lands where such claimed damages do not accrue to the condemnee's property by reason of its severance from the portion condemned. (Code Civ. Proc., § 1248, subd. 2.) As noted below (see fn. 11, *ante*), because of the abbreviated clerk's transcript before us, we have no way of knowing whether defendants attempted to assert such a claim. But it is abundantly clear to us from the record that the damages sought to be claimed and the testimony relevant thereto, which the court excluded, were proffered under the claim of *severance damages.* As such they were properly excluded.

Assuming *arguendo* that *Symons* should not control herein and that defendants are not thereby precluded from asserting impairment of access arising from the closing of the three streets by the construction of the freeway, nevertheless we have concluded that no substantial and actionable impairment of access has been shown.

The principles pertinent to easements of access have been

[11]The clerk's transcript on appeal contains nothing prior to the findings of fact and conclusions of law filed on October 1, 1962. We are therefore unable to ascertain the issues as raised by the pleadings or the factual and legal contentions as to the issues remaining in dispute as set forth in any pretrial conference order.

summarized in *Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659 and *Valenta* v. *County of Los Angeles, supra,* 61 Cal.2d 669, both of which were decided on the sufficiency of the pleadings. In the former case, the court said: "This easement [of access] consists of the right to get into the street upon which the landowner's property abuts and from there, in a reasonable manner, to the general system of public streets. [Citations.] To designate the right, however, is not to delineate its precise scope. Not every interference with the property owner's access to the street upon which his property abuts and not every impairment of access, as such, to the general system of public streets constitutes a taking which entitles him to compensation. Such compensation must rest upon the property owner's showing of a *substantial impairment* of his right of access to the general system of public streets. The determination of whether such substantial impairment has been established must be reached as a matter of law. The extent of such impairment must be fixed as a matter of fact. The cases have consistently held that the trial court must rule, as a matter of law, whether the interference with access constitutes a substantial or unreasonable impairment. . . . Substantial impairment cannot be fixed by abstract definition; it must be found in each case upon the basis of the factual situation." (Fns. omitted.) (61 Cal.2d at pp. 663-664.)

"In summary, the rule which emerges constitutes one of substantial impairment of the right of access. Although destruction of access to the next intersecting street in one direction constitutes a significant factor in determining whether the landowner is entitled to recovery, it alone cannot justify recovery in the absence of facts which disclose a substantial impairment of access." (61 Cal.2d at pp. 666-667.)

In *Valenta, supra,* the court, applying to an *unincorporated rural* area the same test applied in *Breidert* to an *incorporated urban* area, determined that the complaint did not sufficiently allege a substantial impairment of access, observing that the plaintiffs "have failed to specify the use to which plaintiffs have put their property; the added distance, if any, which they must travel in order to reach the general system of public streets or public highways; the lack of availability of reasonable alternative routes to such general system of public streets or public highways; or, indeed, whether the closing has substantially impaired plaintiffs' right of access to such public streets or public highways." (61 Cal.2d at p. 672.)

We proceed to apply the above test of substantial im-

pairment to the case before us.[12] At the outset we find no
merit in plaintiff's contention that defendants' property in
the after condition would have access to the next intersecting
street in both directions. We reject as unrealistic and illusory
the indispensable predicate thereof that upon entering Hol-
brook Street from the northern boundary of the property de-
fendants' right of access would extend to Decoe Street on the
west and Iowa Street on the east. Both of these streets, which
were through streets in the before condition, were to be fully
barricaded in the immediate vicinity of their intersection with
Holbrook. Although we have found no reported California case
involving a comparable factual setting, it seems to us to be
implicit in the next intersecting street rule that such street be
available for travel and passage and therefore to some extent
usable (see *Felton* v. *State Highway Board* (1933) 47 Ga.App.
615 [171 S.E. 198, 200]; *City of Jackson* v. *Wright* (1928) 151
Miss. 829 [119 So. 315, 317]) even though such use might entail
circuity of travel or other inconvenience. (Cf. *Beckham* v. *City
of Stockton* (1944) 64 Cal.App.2d 487, 501 [149 P.2d 296].)
The facts before us show that Decoe and Iowa Streets are
merely residual stubs of former thoroughfares, virtually phan-
tom streets having no real existence. (*City of Jackson* v.
*Wright, supra,* p. 316.)[13] Viewing these circumstances realis-
tally, we feel that defendants' property in the after condition
does not have access westerly along Holbrook to an inter-
secting street because neither Iowa nor Decoe is in reality an
intersecting street at this point. We therefore conclude that
defendants' right of access does not extend in *both* directions

[12]In fairness to the learned trial judge, we must point out that *Breidert*
and *Valenta* were decided on August 20, 1964, approximately two years
after the commencement of the trial of the instant matter. It is note-
worthy that *Breidert* in holding that destruction of access to the next
intersecting street in *one* direction does not *of itself* establish substantial
impairment as a matter of law (*Breidert* v. *Southern Pac. Co., supra,*
61 Cal.2d 659, 665-667 *passim*) qualifies the rule announced in *Bacich*.
(Cf. *Bacich* v. *Board of Control, supra,* 23 Cal.2d 343, 354 where the
court said: "If he has access to the next intersecting street in both
directions and one way is cut off, his easement, if it has any value to
him at all, has certainly been impaired.")

[13]An examination of the maps in evidence discloses barricades of Iowa
and Decoe Streets immediately north of the intersection of Holbrook.
According to the scale on plaintiff's exhibit No. 2 (site map in after
condition) the barricade across Iowa Street is approximately 20 feet
north of the north property line of Holbrook; Decoe Street is not shown.
According to the scale of plaintiff's exhibit No. 3 (strip map showing
entire area) the barricades on both Iowa and Decoe Streets appear at
approximately 65 feet north of Holbrook.

along Holbrook Street but that after entering upon Holbrook defendants are left with only one outlet to the east at Roberts Avenue. We therefore disagree with plaintiff's claim that the next intersecting street rule is satisfied in respect to the easement of access along Holbrook Street.

 Nevertheless, while a significant factor in determining recovery, such loss of access to an intersecting street in one direction does not in and of itself justify recovery. (*Breidert* v. *Southern Pac. Co., supra*, 61 Cal.2d 659, 667.) It is necessary to determine whether the facts as a whole, including such significant factor, disclose a substantial impairment of defendants' access to the general system of public streets and public highways. (*Breidert* v. *Southern Pac. Co., supra, Valenta* v. *County of Los Angeles, supra*, 61 Cal.2d 669, 672.) This is tantamount to an inquiry as to whether defendants' right of access has been unreasonably interfered with. (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 729 [123 P.2d 505]; *People* ex rel. *Dept. of Public Works* v. *Ricciardi* (1943) 23 Cal.2d 390, 398 [144 P.2d 799].) In essence, defendants' complaint is that the only remaining route to the general system of streets and highways, as previously described herein, is longer and difficult to traverse, particularly during peak traffic hours. But this alternate route is only a third of a mile longer. Nor can defendants assert a right to protection from the burdens or hazards of traffic which they must share with the general public. (*Beckham* v. *City of Stockton, supra*, 64 Cal. App.2d 487, 501; see also *People* ex rel. *Dept. of Public Works* v. *Ricciardi, supra*, p. 399.) We do not think that defendants' right of access has been unreasonably interfered with when it is considered that "the tremendous growth of population of this state compels rerouting and rearrangement of streets and highways, . . ." (*Breidert* v. *Southern Pac. Co., supra*, p. 668.) We conclude that on the particular facts before us, there has been no substantial impairment of access.

 Defendants further complain that while the court excluded as a noncompensable item of severance damages the impairment of access arising from the closing of the three streets, it nevertheless permitted plaintiff in rebuttal on the severance damage issue to show that defendants' parking and truck maneuvering situation would not be adversely affected and would even be bettered because the streets were closed. As a result, so defendants' argument goes, defendants' objections to the evidence were overruled and their motions to strike it denied and plaintiff's witnesses were permitted to take into

consideration the very same factual situation withheld from the consideration of defendants' witnesses.

The argument has no merit and is fully answered by the remarks of the trial judge who, in denying one of defendants' motions to strike, made clear that his previous ruling did not mean that the before and after condition of the property could not be considered for any purpose.[14]

*Impairment of view.*

Defendants next contend that the court erred in ruling that their easement of reasonable view was not substantially impaired.[15] While defendants' briefs appear to assert a right *to* a view *from* the property as well as a right *to be viewed from* the abutting streets, defendants made clear to us at oral argument that they seek recovery only for alleged impairment of a right to be viewed.

The rule is settled that the owner of real property abutting a public highway has an easement of reasonable view of his property from the highway and the destruction or impairment of that view is the destruction of a valuable property right. (*People* ex rel. *Dept. of Public Works* v. *Ricciardi, supra,* 23 Cal.2d 390, 404; *Williams* v. *Los Angeles Ry. Co.* (1907) 150 Cal. 592, 595 [89 P. 330]; *People* ex rel. *Dept. of Public Works* v. *Lipari* (1963) 213 Cal.App.2d 485, 488 [28 Cal.Rptr. 808]; *Goycoolea* v. *City of Los Angeles* (1962) 207 Cal.App.2d 729, 735 [24 Cal.Rptr. 719]; *People* v. *Loop* (1954) 127 Cal. App.2d 786, 803 [274 P.2d 885]; 2 Nichols, Eminent Domain, § 5.72[1], pp. 109-110; 90 A.L.R. 793, 794; 29A C.J.S., pp. 429-432; see *People* ex rel. *Dept. of Public Works* v. *Stevenson & Co., supra,* 190 Cal.App.2d 103, 107-108.)

In the instant case defendants argue that the view of their property from the north on Roberts Avenue was cut off by the

_____

[14]The trial judge said: "I point out again that I have not ruled generally that the condition of the neighborhood in its after condition may not be considered for any purpose. My ruling is confined to the fact that the construction of the freeway proper is not an element of compensatory damages in this case. . . . The change of efficacy of the entire neighborhood and the public generally cannot be considered as an element of severance damage. Severance damages must be such as result to the remaining property of the defendant from the taking of the property of the defendant, of a particular part thereof and the construction of the improvement on that property. I have not ruled that we must exclude consideration of the before and after condition of the street."

[15]In the proceedings held outside the jury's presence already referred to, the trial judge stated that he was convinced there was no substantial impairment of view.

solid earth embankment of the freeway[16] and completely destroyed. They make no claim of impairment of view in respect to Holbrook Street. In reply, plaintiff argues that loss of view must pertain only to that part of the street directly in front of defendants' property and that at such point there was no obstruction on Roberts Avenue. The parties thus engage in a dispute as to the lateral limits of the easement of reasonable view, plaintiff contending that the easement is confined to the lateral lines of the property and defendants contending that its extent is "that which is reasonable considering all the circumstances."[17]

■ We need not resolve this dispute. We are of the opinion that under the rule announced in *People* ex rel. *Dept. of Public Works* v. *Symons, supra,* 54 Cal.2d 855, any impairment of the view of defendants' property from the north on Roberts Avenue was a noncompensable item of severance damages since the improvement causing such loss of view, the freeway itself, was not located on the property taken from these defendants.

■ As they did on the preceding issue, defendants contend that *Symons* is not applicable. Assuming *arguendo* that it is not, we nevertheless conclude that there is no impairment of view on the following basis. In the after condition there was nothing which impaired or diminished the visibility of defendants' property in respect to persons travelling on either of the two streets abutting it—Holbrook or Roberts. There can be no impairment of visibility in respect to traffic on Roberts north of Holbrook since all such traffic has been cut off by the freeway under circumstances involving no substantial impairment

[16]It will be recalled that the freeway was to cut across the northeast corner of the intersection of Roberts Avenue and Holbrook Street.

[17]The parties agree and our research confirms that no reported California case appears to have given precise definition to the limits of the easement of view. In *People* ex rel. *Dept. of Public Works* v. *Stevenson & Co., supra,* 190 Cal.App.2d 103, 106 the appellants attacked as erroneous the giving of the following instruction at the request of the state: "In considering damages to the remaining property of the defendants in this proceeding by reason of loss of view from Sepulveda Boulevard, you shall disregard any testimony concerning loss of view on Sepulveda Boulevard *from any point north of the northerly line* of Airport Village. The right of private property to be viewed from the street upon which it abuts extends only to that portion of the street fronting the property." (Italics added.) The court held that it was not error since the first sentence of the instruction "was in effect a declaration or finding by the trial judge that there would be impairment of view of the property, from Sepulveda, commencing at the north line of the property. That declaration or finding was a determination of a question which was for the trial judge." (P. 109.)

of access. The theory supporting an easement of reasonable view of the property from the abutting streets—"that places of business may be established along the highway and parties traveling along the highway may thus be attracted to the places of business and become customers" (*People* ex rel. *Dept of Public Works* v. *Lipari, supra,* 213 Cal.App.2d 485, 491; *Williams* v. *Los Angeles Ry. Co., supra,* 150 Cal. 592, 595)—simply does not exist in the last set of circumstances. In short, there being no traffic to defendants' property from the north, there are no persons in respect to whom the visibility of defendants' property can be said to be impaired.

## The right-of-way agreement.

Defendants next contend that the court erred in allowing direct and cross-examination regarding a right-of-way contract entered into between the state and defendant Wasserman.

The pertinent facts are as follows: The state had previously attempted to acquire Parcel 1 from Wasserman for $1,350 and to that end had obtained from him a right-of-way contract on June 17, 1961, approximately six months before the commencement of the present action. The contract was signed by Wasserman and by the state's right-of-way agent and supervising right-of-way agent, the latter of whom recommended it for approval. It was never signed by Market. It provided, among other things, that Wasserman was to "eliminate" any effect of the existing lease by delivering a quitclaim deed from Market to the state. This provision was never complied with. It developed that the right-of-way contract, although marked for identification (Exhibit 8), was never received in evidence.

On cross-examination, defendants' witness Goslovich[18] was asked if he was aware of the fact that Wasserman had signed a contract for the sale of the property for $1,350. Counsel for defendants thereupon objected on the ground that "Offers of compromise are never admissible." The objection was overruled and the witness replied that he had not heard of the contract and had not consulted with Wasserman about the value of the parcel. Nor could the witness recall the contract having been mentioned at a meeting attended by both Wasserman and himself. Throughout this cross-examination the trial judge considered the contract a valid subject for examination,

---

[18]It will be recalled that Goslovich was the vice-president and general manager of Market, the lessee of the property; and that he had testified that the fair market value of the parcel taken was $3,564 and that severance damages to the remainder were $94,390.

finally stating that "If . . . [a compromise] had been made to appear, or if it is hereafter made to appear, this testimony will be stricken."

At the beginning of its case in rebuttal, plaintiff attempted to introduce the right-of-way contract in evidence by laying a foundation through plaintiff's senior right-of-way agent Peterson. After attempts by plaintiff's counsel to show that the contract was not a compromise, the court finally determined that the agreement could not be introduced, not because it was a compromise, but because the document had not been completely executed. The court also ruled that it was not an admission against interest.

■ A wide latitude should be allowed in the cross-examination of expert witnesses as to value for the purpose of testing their knowledge, judgment, bias and the validity of their opinions. (*San Diego Land etc. Co.* v. *Neale* (1891) 88 Cal. 50, 62 [25 P. 977, 11 L.R.A. 604]; *City of Santa Ana* v. *Harlin* (1893) 99 Cal. 538, 545 [34 P. 224]; *County of San Mateo* v. *Christen* (1937) 22 Cal.App.2d 375, 379 [71 P.2d 88]; *Laguna Salada etc. Dist.* v. *Pacific Dev. Co.* (1953) 119 Cal.App.2d 470, 475 [259 P.2d 498]; *Los Angeles City High School Dist.* v. *Kita* (1959) 169 Cal.App.2d 655, 662 [338 P.2d 60].) The trial court is invested with a broad discretion in these matters. (*Laguna Salada etc. Dist.* v. *Pacific Dev. Co., supra; Los Angeles City High School Dist.* v. *Kita, supra.*) ■ The court did not abuse its discretion in permitting the above cross-examination. As pointed out, Goslovich had testified to a fair market value of $3,564 and severance damages of $94,390. The questions put to him about the right-of-way contract were proper in order to see whether he had considered all information as to value in arriving at his conclusions as well as to test his opinion as to possible bias since he was an officer, director and stockholder of the lessee of the premises.

Turning to the witness Peterson, while we are mindful of the well-established rule that offers in compromise are not admissible in evidence as such (*People* ex rel. *Dept. of Public Works* v. *Forster* (1962) 58 Cal.2d 257, 263 [23 Cal.Rptr. 582, 373 P.2d 630] and cases cited therein; Code Civ. Proc. § 2078; 4 Wigmore on Evidence (3d ed.) § 1061, p. 28; Witkin, Cal. Evidence (1958) p. 182; McCormick on Evidence (1954) pp. 157-158, 539), we find nothing in Peterson's testimony, given either on direct examination or during *voir dire* examination by defendants' counsel, establishing that the document shown

the witness emanated from a compromise between the state and Wasserman. Assuming that defendants' claim that the language of the document itself evidences an attempted compromise settlement may have some validity, nevertheless this cannot be regarded as error infecting the proceedings since the document was never admitted in evidence. The entire incident adds up to an unsuccessful attempt by plaintiff to introduce a contract between the parties and the rejection of the evidence by the court because the contract was never completely executed. Under the above circumstances no error was committed in giving plaintiff an opportunity to lay a foundation for the document.

*The lease.*

 It is urged that the court erred in allowing cross-examination of defendants' witness Goslovich regarding the lease entered into between Wasserman and Market. This document had been received in evidence without objection during the direct examination of the witness. On cross-examination, plaintiff's counsel, after questioning the witness about his relationship with the lessee, attempted to ask him about the provision in the lease dealing with condemnation proceedings[19] for the announced purpose of showing the ''bias and frame of mind of this witness. . . .'' Over objection, cross-examination then proceeded in a somewhat indefinite manner purportedly directed to the bias of the witness until the court finally interrupted: ''Can't you bring out what you are getting at by simply asking him if he wouldn't like to see this rent reduced as a result of this lawsuit?''

The thrust of defendants' present argument seems to be that as a result of such cross-examination the inference was improperly ''planted'' that Market was to receive some benefit from the eminent domain proceedings by way of a rent reduction. We do not agree. Although it was permissible to cross-examine the witness on the matter generally in order to show bias (see *City of Santa Ana* v. *Harlin, supra,* 99 Cal. 538, 545 and other cases cited *supra*), it eventually developed that the lease provision referred to in the cross-examination was

---

[19]Paragraph 18 of the lease provided that (1) if all or substantially all of the premises were condemned or if the building was taken, either party had the right to terminate the lease on 30 days' written notice and (2) if a portion of the building was condemned and the premises were still usable by the lessee, the lessee was entitled to a pro rata rent reduction.

not applicable since neither all nor substantially all of the property was being condemned nor any part of the building located thereon was being condemned. At the conclusion of the case the jury were instructed to this effect and that paragraph 18 was not operative. We must assume that they followed the court's instruction and we conclude that if there was any error in the cross-examination it was cured thereby. We cannot see how defendants have been prejudiced.

*Instructions on fair market value and severance damages.*

Defendants contend that in instructing the jury the court erred by refusing to define "fair market value" and "severance damages." Their argument is bifurcated: not only were their requested instructions on these subjects refused but, it is claimed, no instructions at all were given thereon.

 The law is clear that instructions on points which have been sufficiently covered by other instructions may properly be refused although they are correctly drawn and applicable to the evidence. (*Libby* v. *Dunston* (1925) 72 Cal. App. 494, 496 [237 P. 565]; *Marques* v. *Hill* (1961) 191 Cal.App.2d 777, 780 [13 Cal.Rptr. 168].) "A party is not entitled to have the jury instructed in any particular phraseology, and may not complain on the ground that his requested instructions are refused if the court, of its own motion or otherwise, correctly announces the substance of the law applicable to the case. [Citation.]" (*Luis* v. *Cavin* (1948) 88 Cal.App.2d 107, 115 [198 P.2d 563]; *Lemere* v. *Safeway Stores, Inc.* (1951) 102 Cal.App.2d 712, 726-727 [228 P.2d 296]; *People* v. *Magee* (1963) 217 Cal.App.2d 443, 469 [31 Cal.Rptr. 658], cert. denied 376 U.S. 925 [84 S.Ct. 688, 11 L.Ed.2d 620].)

We have concluded that the court correctly and adequately instructed on the above subjects. The two instructions on fair market value set forth in the footnote[20] are correct statements of the law on that subject. (See *Sacramento*

[20]These instructions were: "The plaintiff in this case must compete in the open market with bonafide purchases and must pay to the owners of the property the highest and greatest sum which such owner could and would receive from the sale of the property in the open market to anyone wishing to buy but not compelled to do so."

"By market value is meant not what the property would sell for at a forced or distressed sale, or at a sale where there were no buyers ready, able and willing to buy and pay for the property for any and all purposes for which it is adapted or for which it may be used, *but a sale consummated after due deliberation and full consideration where the buyers have sufficient money to buy and pay for the property and want*

*Southern R.R. Co.* v. *Heilbron* (1909) 156 Cal. 408, 409 [104 P. 979]; *People* ex rel. *Dept. of Public Works* v. *Ricciardi, supra,* 23 Cal.2d 390, 401; *People* v. *Ocean Shore R.R., Inc.* (1948) 32 Cal.2d 406, 427-428 [196 P.2d 570, 6 A.L.R.2d 1179]; *People* ex rel. *Dept. of Public Works* v. *City of Fresno* (1962) 210 Cal.App.2d 500, 515-516 [26 Cal.Rptr. 853].)

▬ Additionally the two instructions on severance damages set forth in the footnote[21] are correct statements of the law on that subject. (Code Civ. Proc., § 1248, subd. 2; *People* v. *Thompson* (1954) 43 Cal.2d 13, 25 [271 P.2d 507]; *People* v. *Loop, supra,* 127 Cal.App.2d 786, 799; *People* v. *Hayward Bldg. Materials Co.* (1963) 213 Cal.App.2d 457, 464 [28 Cal.Rptr. 782]; and *People* ex rel. *Dept. of Public Works* v. *Silveira* (1965) 236 Cal.App.2d 604, 616-617 [46 Cal.Rptr. 260].)

*Comparable sale by Hudson.*

Defendants next contend that the court erred in admitting testimony in regard to the sale of adjacent property as a comparable sale without foundation as to its free and voluntary nature. Plaintiff's valuation witness Bolla testified without objection as to a sale by one Hudson to the State of California for $10,701 of property located immediately across the street from defendants' property. After several questions along these lines, defendants finally interposed an objection on the ground that there was not "yet any proper foundation laid as to this sale being a free transaction insofar as the buyer and seller are concerned in this sale." In response to the court's

and were willing to pay for it for all the purposes and uses which naturally and reasonably affect its value, and where the seller or owner, while willing and desiring to sell, is in no way obliged to sell and who insists on the property bringing its full market value. As nearly as you possibly can, you are to place yourself in these positions, and assuming all the facts, weigh and determine the highest price for which the property would sell." (Italics added.)

[21]These instructions were: "One of the issues in this action for your determination is whether or not the defendants' remaining property has been damaged. The existence or non-existence of such damage depends upon whether the remaining property has in fact been reduced in market value as a result of the acquisition and of the construction of the public improvement."

"If you find the market value of the remaining property is not diminished or decreased by the taking of a portion of the property and the construction of the improvement in the manner proposed, then the defendants are not entitled to recover anything in this action except the market value of the land sought to be taken, and accordingly you should allow no compensation for severance damage."

direction that plaintiff should lay a foundation, Bolla then testified that he had verified the Hudson sale with the state negotiator; that as a result he had determined that it "was an arm's length transaction"; that he had not discussed the transaction at all with Hudson, the seller; that he based his determination that it was an arm's length transaction entirely on his interview with the state negotiator; and that he felt that the latter by contacting and negotiating with the seller knew that the seller regarded it as a negotiated arm's length transaction.

Defendants appear to contend that no proper foundation was established because the witness did not verify the sale with the seller, citing without any extensive discussion *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672 [312 P.2d 680], *County of San Mateo* v. *Bartole* (1960) 184 Cal.App.2d 422 [7 Cal.Rptr. 569] and *People* ex rel. *Dept. of Public Works* v. *Kawamoto* (1964) 230 Cal.App.2d 18 [40 Cal.Rptr. 685].

Contrary to defendants' claim, we are of the opinion that the foregoing authorities impose no such strict requirement. In *County of Los Angeles* v. *Faus, supra,* 48 Cal.2d 672, 678-679 the Supreme Court, in declaring that in condemnation proceedings evidence of prices paid for similar property was admissible on direct examination as well as on cross-examination, adopted such rule, together with its safeguards, as set forth by McCormick. (See McCormick on Evidence (1954) § 166, pp. 348-349.) That authority, after noting that the trial judge in applying the rule "must be granted a wide discretion," states: "Since the market value sought is the estimate of what a willing [buyer] would have paid a willing [seller], prices on other sales of a forced character are inadmissible. . . . [E]vidence of the price paid [by the condemner] should come in if the condemner can satisfy the judge that the price paid was sufficiently voluntary to be a reasonable index of value. In any event, the sale must be genuine, and the price must be actually paid or substantially secured." (McCormick, *op.cit.,* p. 349 as quoted in *County of Los Angeles* v. *Faus, supra,* 48 Cal.2d 672, 678-679.) The opinion of this court in *County of San Mateo* v. *Bartole, supra,* 184 Cal.App.2d 422, 439 following *Faus* and quoting from *People* ex rel. *Dept. of Public Works* v. *Murata* (1958) 161 Cal.App.2d 369, 375 [326 P.2d 947] is to the same general effect.

So far as is here pertinent, the above-mentioned rule means essentially this: that evidence of comparable sales is

properly received if the judge, in the exercise of a wide discretion, is satisfied that the price paid "was sufficiently voluntary to be a reasonable index of value." There is nothing in the above authorities indicating that this safeguard cannot be met unless the seller is contacted by the valuation witness. In the instant case, the state negotiator was in a position to describe the transaction in which he participated and information emanating from him warranted the conclusion that the sale was voluntary. It was within the discretion of the trial judge to accept this testimony. No evidence of pressure brought on either side or of any ultimate dissatisfaction with the sale was indicated. (*People* ex rel. *Dept. of Public Works* v. *City of Los Angeles, supra,* 220 Cal.App.2d 345, 359.)

*Refusal of defendants' requested instruction No. 33.*

 Defendants claim that the court erred in refusing their requested instruction No. 33 set forth in the footnote.[22] It is argued that since plaintiff's witnesses had testified on the issue of severance damages that in the after condition of the property the parking situation would be as good as or better than it was in the before condition, the jury had a right to know that the county could prohibit or restrict parking.

Although a party to a lawsuit is entitled to have the jury instructed on all of his theories of the case which are presented by the pleadings and *supported by the evidence* (*Phillips* v. *G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33] ; *Davis* v. *Erickson* (1960) 53 Cal.2d 860, 863 [3 Cal.Rptr. 567, 350 P.2d 535] ; *Sills* v. *Los Angeles Transit Lines* (1953) 40 Cal.2d 630, 633 [255 P.2d 795] ; *Daniels* v. *City & County of San Francisco* (1953) 40 Cal.2d 614, 623 [255 P.2d 785]), nevertheless it is not only not proper, but is error, to instruct on a theory which is unsupported by the evidence. (*Wagner* v. *Osborn* (1964) 225 Cal. App.2d 36, 49-50 [37 Cal.Rptr. 27] ; *Strandt* v. *Cannon* (1938) 29 Cal.App.2d 509, 513 [85 P.2d 160].)

In the instant case defendants fail to point out to us any evidence establishing the reasonable probability of any change of parking regulations. On the other hand plaintiff's witness

---

[22]This instruction reads as follows: "It is within the police power of the County of Sonoma to prescribe time limits for vehicular parking on Roberts Avenue, Holbrook Street, Iowa Street and Decoe Street, or to completely prohibit vehicular parking on said streets within Sonoma County territory. If these streets should be incorporated into the City of Santa Rosa, the City of Santa Rosa would have the same police power over said streets as the County of Sonoma now has and had on the date of valuation herein, which is as I have just instructed you."

McClone, a traffic engineer employed by the Sonoma County Road Commissioner, testified that such department had no plans for any restriction of parking in the vicinity of defendants' property. Therefore, since there was no evidence from which the jury could have found or reasonably inferred that parking restrictions would be put into effect in the foreseeable future, the instruction in question was properly refused. While it may have been correct as an abstract proposition of law, under the circumstances it was likely to mislead the jury. (*Davenport* v. *Stratton* (1944) 24 Cal.2d 232, 254 [149 P.2d 4]; *Strandt* v. *Cannon, supra*; *Untalan* v. *Glass* (1961) 190 Cal.App.2d 474, 477 [12 Cal.Rptr. 1]; 2 Witkin, Cal. Procedure (1954) p. 1799.)

*Plaintiff's instructions.*

Finally, defendants contend that the court erred in giving plaintiff's instructions Nos. H-1, E-4, E-11, D-7 and D-6. It is noteworthy that defendants make no claim that any of these instructions set forth incorrect statements of law. While defendants assert in a general way that each of the last four instructions finds no support in the evidence, they make no attempt to demonstrate the validity of this criticism by any fair summary of the evidence on the point.

1. As to instruction No. H-1 set forth in the footnote[23] defendants specifically complain that there was no issue of public necessity and that the instruction is susceptible of the interpretation that the court thought there was little damage in the case. While the issue of public necessity is not justiciable (*People* ex rel. *Dept. of Public Works* v. *Chevalier* (1959) 52 Cal.2d 299, 306 [340 P.2d 598]; *People* ex rel. *Dept. of Public Works* v. *Lagiss* (1963) 223 Cal.App.2d 23, 33 [35 Cal.Rptr. 554]), it was not improper for the court to call the jury's attention to matters not involved in the case. (*Tingley* v. *Times Mirror Co.* (1907) 151 Cal. 1, 28 [89 P. 1097]; 2 Witkin, Cal. Procedure (1954) p. 1787.) Under the circumstances, the instruction did not mislead the jury into thinking defendants suffered little damage.

2. We reject defendants' argument that instruction

---

[23]Instruction No. H-1 reads: ''The Court finds, and you are specifically instructed, that there is a public need for the construction of this State highway, and that it is necessary for the People of the State of California to acquire Parcel 1 for its construction. The Court also finds, and you are likewise instructed, that the construction of this State highway is planned and located in a manner which is most compatible with the greatest public good and the least private injury.''

No. E-4[24] is without support in the evidence. This instruction merely told the jury that in determining severance damages they should consider elements which were appreciable and substantial and not those which were remote, uncertain or speculative. It is not challenged as a correct statement of the law (see BAJI Instruction No. 506-A) and we do not see how it could have misled the jury.

3. Concerning the last three instructions (Nos. E-11, D-7 and D-6), defendants make only a general complaint that they find no support in the evidence. No useful purpose would be served by setting them forth herein. Generally speaking No. E-11 instructed the jury not to consider what the property was worth to defendants for speculation or possible uses or what it was worth to plaintiff for highway purposes but only its fair market value; No. D-7 not to indulge in any speculation or conjecture in determining its fair market value; and No. D-6 that the owner's unwillingness to sell, if any, does not affect fair market value. Defendants do not challenge these instructions as correct statements of law and do not point out how they were likely to mislead the jury.

█ Furthermore, assuming *arguendo* that it was error to give all or any of the above five instructions, such error would not compel a reversal herein in the absence of an affirmative showing that it was likely to mislead the jury. (*Mehollin* v. *Ysuchiyama* (1938) 11 Cal.2d 53, 57 [77 P.2d 855] and cases therein cited; *Sortino* v. *Loneoak* (1944) 66 Cal.App.2d 876, 883 [153 P.2d 428]; *Trelut* v. *Kazarian* (1952) 110 Cal. App.2d 506, 512 [243 P.2d 104] ; see 2 Witkin, Cal. Procedure (1954) p. 1800.)

The judgment is affirmed.

Molinari, J., and Sims, J., concurred.

A petition for a rehearing was denied April 11, 1966, and the opinion was modified as printed above. Appellants' petition for a hearing by the Supreme Court was denied May 11, 1966.

---

[24]Instruction No. E-4 reads: ''In assessing the damage, if any, which may accrue to the defendants' remaining property by reason of the taking and the construction of the highway improvement, you must not consider anything as tending to depreciate such market value which is uncertain, remote, speculative or imaginary or merely possible, if testified to by any witness or witnesses. The only elements of damage which you may take into consideration are those elements which tend to reduce the market value of the remaining property, in other words, elements which are appreciable and substantial and actually lessen the market value.''